CHARLES J. LOWERY, Respondent, v. THE BROOKLYN CITY AND NEWTOWN RAILROAD COMPANY, Appellant.

Defendant, under a license from the B. C. R. R. Co., a street railroad company, in the city of Brooklyn, connected its road with that of the latter company, at a point on the street where there was a cross-walk. By the agreement between the two companies, defendant was to make and pay for all switches necessary to avail itself of the license ; after connection was made the B. C. R. R. Co. stipulated to keep the tracks in repair, and no right was reserved or duty imposed on defendant, as to said tracks, after the switch was once laid, or as to the ·pavement or cross-walk adjoining the track. The B. C. R. R. Co. had .contracted with the city to keep the pavement " within the tracks and three feet each side thereof" in repair. The portion of the switch at the cross-walk was a part of the track of the latter company. It was, as defendant's evidence tended to show, properly laid originally, with its flange below the surface of the cross-walk, but, by the sinking and wearing away of the cross-walk adjoining, its surface was brought below the switch, and an obstruction was caused, by means of which plaintiff was thrown down and injured. In an action to recover damages, *held*, that defendant, as to the portion of the switch in question, had no duty to perform in maintaining it, and was not liable for failure to keep the cross-walk in repair; and that, therefore, a charge of the court that it was defendant's duty, in the proper maintenance of its switch, " to keep the cross-walk on a safe level with the grade of the switch," was error.

(Argued December 11, 1878 ; decided January 21, 1879.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for injuries alleged to have been occasioned by defendant's negligence.

In April, 1876, plaintiff was walking upon a cross-walk, crossing Fulton street, in the city of Brooklyn, when his foot was caught in a switch connecting one of the rails of defendant's track with that of the Brooklyn City Railroad Company, and he was thrown down and injured ; the flange of the switch projected some two or three inches above the cross-walk.

The further facts appears in the opinion.

*Stephen H. Olin*, for appellant.  The court erred in charging the jury that defendant was bound to maintain the cross-walk on a safe level with the switch.  (3 Daly, 281; *Bklyn.* v. *B. C. R. R. Co.*, 47 N. Y., 475; *City of Troy* v. *T. and L. R. R. Co.*, 49 U. S., 657; *People* v. *Bklyn.*, 65 N. Y., 349.)

*D. P. Barnard*, for respondent.  Defendant is responsible for the accident.  (*Carpenter* v. *C. P. N. and E. R. R. R. Co.*, 11 Abb. Pr. [N. S.], 416; *Johnson* v. *Friel*, 50 N. Y., 679.)  The defective switch had existed for such a length of time that defendant was chargeable with notice thereof.  (*Todd* v. *City of Troy*, 61 N. Y., 506; *Rockwell* v. *Third Avenue R. R. Co.*, 64 Barb., 438; *Worster* v. *Forty-second street and G. S. F. R. R. Co.*, 50 N. Y., 203.)

Hand, J.* The charge as given to the jury, notwithstanding the ambiguity of the answers to some of the defendant's requests, taken as a whole, clearly enough instructed them that the defendant would be liable, although the switch was originally constructed by it with its flange below the surface of the cross-walk and with all due care, in every respect, if by the sinking and wearing away of the flagstones of the cross-walk, their surface was brought below the switch and an obstruction thus caused. In other words, the court told them that it was the duty of the defendant to keep the cross-walk on a level with the grade of the switch.  If there were any doubt about this before, it was ended by the reply of the judge to the communication made by the jury after they went out to deliberate, and which was in these words : " In the proper maintenance of their switch, at the point where the accident occurred, was it the duty of the Brooklyn City and Newtown Railroad Company to keep the cross-walk on a safe level with the grade of the switch ? "  To this question the court answered " yes," and the defendant took exception. As there was abundant evidence upon which the jury might

* This opinion written by Hand, J , while a member of the court, was adopted by the court.

have found that there was no projection of the flange as originally constructed, but that the whole difficulty arose from subsequent either sudden or gradual settling and wearing away, by the public use of the street, of the surface of the cross-walk, it follows that if this instruction was wrong, as matter of law, there must be a new trial, without reference to the other questions in this case.    It appears from the map in evidence and from the oral testimony that the objectionable switch, at the point of injury, where the cross-walk is placed, was a part of the track of the Brooklyn City Railroad Company ; that it was laid by the defendant, by the permission of that company, for the purpose of turning from their track to the track of the defendant, and was used as a part of the Brooklyn City Railroad track by both companies. By the agreement between the two railroad companies, the defendant was licensed to use the track of the Brooklyn City Railroad, and must make and pay for all switches necessary to avail itself of such license.    No right is reserved by or duty imposed upon the defendant of interfering with the track of the Brooklyn City Railroad, after it has once laid the switch, or with the pavement or cross-walk on each side of the track.    On the contrary, the Brooklyn City Railroad expressly stipulates that it is to keep the tracks in repair. As between the two companies, therefore, it is clear that the defendants have no duty, having once properly laid a part of the track of the Brooklyn City Railroad, or even right to keep it in repair, and much less to keep the pavement in its neighborhood up to grade or in proper repair.    As to the latter, the Brooklyn City Railroad has a contract with the city of Brooklyn to keep the pavement " within the tracks, and three feet on each side thereof" in thorough repair, which would, of course, include keeping the cross-walk up to grade, if that were necessary to the " thorough repair" of the street.    And it is well settled that, under that contract, that company is directly liable to persons injured by its failure to perform : (*Brooklyn* v. *Brooklyn City R. R.*, 47 N. Y., 475; *McMahon* v. *Second Ave. R. R. Co.*, unreported).*

---

* 75 N. Y., 231.

It seems to be a necessary conclusion from these premises that the defendant, as to the portion of the switch forming a part of the track of the Brooklyn City Railroad Company, has nothing to do with its maintenance. In laying it down, it occupied the position, with regard to the public, of a contractor for the Brooklyn City Railroad Company, and in its use, of a licensee of that company, to whom the latter had permitted the use of a portion of its track. It is not necessary to hold but that the defendant would be liable for injuries occasioned by any fault in the original construction or the improper condition, at any time, of its own track, even though such injuries were contributed to by the bad repair of the streets : (*Carpenter* v. *Central Park R. R. Co.*, 11 Abb. [N. S.], 416). Nor indeed need it be here denied that if any portion of the defendant's track should become an obstruction, solely by reason of the failure of the city to keep the streets in repair, the defendant would be liable for the consequences, (*Fash* v. *Third Ave. R. R. Co.*, 1 Daly, 150) although, in my opinion, this last proposition is questionable.

Here the structure complained of is not a part of the defendant's track at all. It belongs to the Brooklyn City Railroad Company, and is to be maintained in repair by them. If the defendant laid it properly, and is paid for that service to the other company by the use of a part of the track, it would seem to have no other duties with reference to that track than to use it with care.

But again, the switch, with its flange, is shown to be the best known. Its use seems to be indispensable to the carrying out of the lawful purposes of the defendant's charter. It is maintained in perfect order, in every respect. Its level is what it should be, with reference to the street. It would be manifestly impracticable to sink it to the level of a settled flag or flags in the neighborhood, for that would prevent its necessary correspondence in level with the contiguous part of the railroad track, and when the street was put in repair might place it so far below the street level as to be a nuisance.

Considered as a part of the pavement of the street, assuming that it had been properly laid originally, it is in itself lawful and not a nuisance. The only difficulty arises from the failure of the parties upon whom the duty rests of keeping other parts of the pavement in proper repair. The case may be likened to one where the Brooklyn City Railroad Company, under its contract with the city, had kept, under the direction of the street superintendent, its portion of the pavement, three feet outside of its track, in good order and up to the established grade. It could not be said that it would be liable because, by the subsidence and want of repair of other portions of the pavement, its portion projected, and thus became an obstruction to the crossing of the street by pedestrians.

On the whole, we have come to the conclusion that it was not the duty of the defendant, at the point where the accident occurred, to keep the cross-walk on a level with the grade of the switch, and that the court, in so instructing the jury, erred. For this error, the judgment must be reversed and a new trial ordered, with costs to abide the event.

All concur, except CHURCH, Ch. J., not voting.

Judgment reversed.