Milton Wooley, Respondent, *v.* The Grand Street and Newtown Railroad Company, Appellant.

Plaintiff's sleigh was upset by striking against a switch laid down by defendant in a street in the city of B., to connect its tracks with that of another road over which it ran its cars. The evidence tended to show that the switch was higher above the pavement than was necessary or reasonable; that defendant had put salt on its track which had melted the snow and caused the slush to run down and cover the switch from sight. Accidents had frequently happened to other passing vehicles from the same cause. In an action to recover damages, *held*, that the evidence justified the submission of the question of defendant's negligence to a jury.

Plaintiff knew that there was a switch in that locality, but it did not appear that he had in mind its precise location; he was not thinking particularly of the switch at the moment of the accident; but, thinking the place was one dangerous to cross without care, was going slowly and using great caution. *Held*, that he was not, as matter of law, chargeable with contributory negligence; but that the question was one for the jury.

The evidence was to the effect that, as between the defendant and the other street railway, with whose tracks the switch made a connection, the defendant was to keep the switch and the abutting pavement in good condition. The court was asked to charge that if the switch was properly put down defendant was not chargeable; the request was refused, but the court charged that if the switch was skillfully put down and was in itself no obstruction, which a person could not, with ordinary care and prudence, avoid, the proposition would be correct. *Held*, no error; that although the switch was a proper one and well laid down, if it subsequently, from any cause, was raised to an undue height above the pavement, or the pavement had sunk unduly below it, it was defendant's duty to put it in good condition.

*Lowery* v. *B. C. & N. R. R. Co.* (76 N. Y. 28), distinguished.

Also, *held*, that although the degree of care and prudence required of one traveling upon a street wherein a street railway has been rightfully laid

down, was greater than that required in traveling upon a street not so used, yet that it might still be characterized as ordinary.

A witness was asked, by plaintiff's counsel, whether the switch was as high at the time of the trial as at the time of the accident; this was objected to and objection overruled. *Held,* no error.

Also, *held,* that it was not error to receive evidence that there had been other accidents at the same switch.

After the court had charged, in substance, that the switch used was not in itself objectionable, but was only so if found by the jury to have been, at the time, too high to be compatible with defendant's right to a reasonable use of the street and to have been an obstruction, was asked by defendant's counsel to instruct the jury, that defendant was not chargeable with negligence in putting down the switch he did, that the switch used was not an obstruction in law, if properly laid. The court replied it would leave that to the jury. *Held,* that the request and answer must be considered in view of what the court had already charged, and so considered was not error.

(Argued November 15, 1880; decided December 1, 1880.)

APPEAL from judgment of the General Term of the city court of Brooklyn, entered upon an order made September 20, 1879, affirming a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are sufficiently set forth in the opinion.

*N. C. Moak* for appellant. The defendant is not answerable in damages to the plaintiff for maintaining the switch in question; it was the reasonable exercise of a legal right. (*Mazetti* v. *N. Y. & Harlem R. R.,* 3 E. D. Smith, 98; *Lowery* v. *Brooklyn City & Newtown R. R.,* 76 N. Y. 28; *Lockwood* v. *North Missouri R. R.,* 34 Mo. 259.) It was error to admit the testimony as to the elevation of the switch being greater at the time of the trial than it was when the plaintiff was injured. (*Dale* v. *Delaware & W. R. R.,* 73 N. Y. 468; *Payne* v. *Troy & Boston R. R.,* 9 Hun, 526; *Salters* v. *Delaware & H. R. R.,* 3 id. 338; *Dougan* v. *Champlain T. Co.,* 51 N. Y. 1.) The testimony of the witness, Robert Squires, as to the statement he made after the accident to the defendant's superintendent about the switch, was

improperly admitted. (*Furst* v. *Second Ave. R. R.*, 72 N. Y. 542; *Luby* v. *H. R. R. Co.*, 17 id. 131; *Whitaker* v. *Eighth Ave. R. R.*, 51 id. 295.) It was error to refuse to charge "that the defendant had a right to use the switch in question," and if it was properly put down it is not chargeable with negligence. (*Lowery* v. *Brooklyn City & Newtown R. R.*, 76 N. Y. 28; *Mazzetti* v. *N. Y. & Harlem R. R. Co.*, 3 E. D. Smith, 98; *City of Brooklyn* v. *Brooklyn City R. R.*, 47 N. Y. 482; *Lockwood* v. *North Missouri R. R.*, 34 Mo. 259.)

*J. J. Perry* for respondent. If defendant maintained the switch elevated above the level it is liable for the consequences whenever an accident occurs, without negligence upon the part of the injured. (*Carpenter* v. *The Central Park R. R. Co.*, etc., 11 Abb. N. S. 416.) It is sufficient that the negligence of the defendant's company operated in producing the accident. (*Mott* v. *Hudson R. R. Co.*, 8 Bosw. 345; *Brehm* v. *Great Western Railway Co.*, 34 Barb. 256; *Lockhart* v. *Lichtenthaur*, 46 Penn. S. L. 157.) Whether the appliances and machinery used by the company are the best known in practical use, is a question for the jury, upon the evidence of all the witnesses on that subject. (*Steinway* v. *The Erie Railway*, 43 N. Y. 126; 2 Redf. on Railways, 189; *Benir* v. *Delaware & Hudson C. Co.*, 13 Hun, 254; *Lee* v. *Northern Cent. R'y Co.*, 3d department, January, 1879; Weekly Dig., April, 1879, 110.) The fact that numerous other accidents happened at the same switch shows it to be an obstruction and dangerous, and the attempt to show that wagons were caught in that switch in another way from that of this plaintiff can have no effect. (*Lee* v. *N. Cent. R'y* ; *Quinlan* v. *The City of Utica*, 18 Hun, 11, 247.) The question of negligence is one for a jury. (*Whipple* v. *The West. Phil. Passenger R. R. Co.*, 6 W. D. 80; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 594; *Ernst* v. *H. R. R. R. Co.*, 35 id. 9; *Voak* v. *Northern C. R. R. Co.*, 75 id. 320; *McMahon* v. *Second Ave. R. R. Co.*, id. 231.) A corporation is responsible for its neglect to perform the duty imposed upon it. (*Conrad* v. *Village of Ithaca*, 16 N. Y.

158; *Weed* v. *Village of Ballston Spa.*, 76 id. 329.) Defendant is liable in as much as by its charter it obligated itself to replace and maintain the highway in a suitable and reasonably safe condition for public travel. (*Todd* v. *City of Troy*, 61 N. Y. 506; *Eggleston* v. *Columbia Turnpike*, 8 Weekly Dig. 323.) The evidence as submitted was conflicting and as such was a question for the jury and was properly submitted to the jury. (*Renwick* v. *N. C. R. R. Co.*, 36 N. Y. 132; *Millard* v. *Pinard*, 44 Vt. 34; *Ditchell* v. *Spuyten Duyvil R. R. Co.*, 5 Hun, 165; *Sheehy* v. *Burger*, 62 N. Y. 418; *Bidwell* v. *Lamont*, 17 How. 357; *Keller* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 24; *Hunt* v. *Lowell Gaslight Co.*, 1 Allen, 343; *Nichols* v. *Sixth Ave. R. R. Co.*, 38 N. Y. 131; *Fallon* v. *C. P. & R. R. Co.*, 64 id. 13; *Mangan* v. *Brooklyn R. R. Co.*, 38 id. 455; *Borst* v. *Lake S. & Michigan R. R. Co.*, 4 Hun, 346; *Kirkpatrick* v. *N. Y. C. & H. R. R. R. Co.*, 6 Weekly Dig. 106.) The negligence of the plaintiff, in order to preclude him from recovery, must be such that by ordinary care he could have avoided the consequences, and the jury from the facts are to say whether the plaintiff contributed to the injury. (*Beers* v. *Housatonic R. R. Co.*, 19 Conn. 566; *Colgrove* v. *N. H. R. R. Co.*, 2 N. Y. 492; *Sheehy* v. *Burger*, 62 id. 588; *Green* v. *Erie R. R. Co.*, 18 S. R. R. 333; *People* v. *The N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 595.) The liability of the company to restore the highway intersected by its tracks is a continuing obligation and condition of its rights to occupy. (*Requa* v. *City of Rochester*, 45 N. Y. 129; *Mayor* v. *Sheffield*, 4 Wall. 189, 195, 196.) Defendant would be liable for injuries occasioned by any fault in the original construction, or the improper condition, at any time, of its own track, even though such injuries were contributed to by the bad repair of the streets. (*Carpenter* v. *Central Park R. R. Co.*, 11 Abb. N. S. 416; *Colgrove* v. *N. Y. & N. H. R. R. R. Co.*, 6 Duer, 382; *S. C.*, 20 N. Y. 492.)

FOLGER, Ch. J. This is an action brought to recover damages for injury to the person of the plaintiff and to his

property. The injury was caused by the upsetting of the vehicle of the plaintiff in which he was going with his goods ; and it was upset by striking against a switch of the defendant laid down in its track in the public street in the city of Brooklyn, and rising above the level of the abutting street pavement. The issues made by the pleadings are that the injury came to the plaintiff from his negligence contributing thereto, and that the defendants were guilty of negligence in putting the switch in the public way in the manner that it was laid down, or in suffering it to get into a bad state afterward, the objectionable manner of laying down and the suffered state as alleged being that it was too high above the surface of the pavement, and made an obstruction dangerous to travel. At the trial the plaintiff recovered, and it is as well in considering the case here, to treat the points made by the defendant in their order as presented in this court, as near as may be. We may remark however, in passing, that the attention of the parties, and consequently of the trial court, was too much distracted from the real issues in the case to what seems to us the non-essential question of the comparative merits of the switches of rival patentees of those articles.

1st. We think that it was for the jury to say whether the plaintiff was guilty of negligence contributing to the injury. It is true that he knew that in that locality was the switch now pronounced an unreasonable obstruction to travel. It does not appear that he had in mind the exact spot at which it was to be met with. It is true that he was not thinking particularly of this switch at the moment of the accident. But he was thinking of the whole space about there as not a place to cross in safety without care in doing so, and was going slowly and conducting himself with greater caution in view of the difficulty of crossing there safely. The exact spot at which was this switch was hidden from his view by the snow and slush that covered it, and which had gathered there from acts of the defendant. Such is his own testimony, sustained and supplemented in some particulars by that of other witnesses.

We cannot say, as matter of law, that he was guilty of contributory negligence.

2d. The defendant had the right to put down such appliances in the street as were needful for the convenient use of its franchise to operate a horse-railway. The restriction upon the use of this right is that the use may not be negligent or unskillful, or without reasonable care therein. It is manifest that it was a question of fact, and to be passed upon by a jury under proper instructions from the court, whether the defendant in this case used a switch that was the best for the purpose in general and acknowledged use, and laid it down with proper skill and care, in a proper manner, and so kept and used it. The defendant might have adopted a kind of switch that experience had condemned, or refused to adopt one that experience had shown to be the best, or among the best; or using the latter, had at first put it down carelessly or unskillfully; or having at first put it down well, had suffered it or the pavement about it to get out of proper position relatively or otherwise, so that there was at first or at last an obstruction in the public way needlessly and unreasonably dangerous to passers over it. These were questions for a jury to try and determine. And if they had testimony which raised them or either of them, and there was no error in the submission of the case to their consideration, their verdict is conclusive.

3d. Whether there was testimony for the jury is a point raised by the motion for a nonsuit. There was testimony of the height of the switch above the pavement; that accidents had not infrequently happened to vehicles passing there; the testimony tended to show that these mischances had come from striking against this switch; there was testimony tending to show that the defendant had put salt upon its track, and thus had caused the slush and snow to run down to and cover the switch from the sight of passers by. We think that there was testimony for the jury tending to show facts, from which it could be properly argued to them that the switch was raised at first, or afterward became higher, above the pavement than was necessary or reasonable, and being thus raised was left so

hidden by slush and snow as not to be seen, in its dangerous state, by drivers of vehicles. We cannot say that there was nothing to leave to the jury upon the question of the defendant's negligence, or want of skill or unreasonable and unnecessary use of the street.

4th. Errors are alleged to have been made in the charge. The court was asked to charge: " that the defendant had a right to use the switch in question, and if it was properly put down, they are not chargeable." It is probable that this request had reference to the kind of switch, a question much agitated on the trial, and was meant to ask the court to say that the defendant had as good right to use the Wharton, No. 2, switch as the Johnson switch. Possibly it is not so however, and we will treat it as a request referring to the switch used, without regard to what patent it was of. Thus viewed, it will be seen that the request considers only the character of the switch, and the manner of the laying of it down in the first instance. The request does not consider what may have taken place since it was laid down, either by the raising of the switch or the depression of the surrounding pavement. The switch may have been of a good pattern and design, and well laid down; but if the frost or other force of nature had raised it to an undue height above the adjacent pavement, or by any cause that pavement had been sunk unduly below it in level, and it was the duty of the defendant to meet and avoid this changed condition, it might be liable. The request to charge left out this idea. It was in testimony that this switch was one to be maintained by the defendant, which had the direction and the duty whether it should be changed or altered in its relation to the surrounding pavement. It was a fair inference that, as between the defendant and the other street railway, whose tracks the defendant reached for use by means of this switch, the defendant was to keep the switch and the abutting pavement in good condition. This case differs in this respect from that of *Lowery* v. *B. C. & N. R. R. Co.* (76 N. Y. 28). There the defendant was to lay down the switch, after that the connecting railway company was to keep in repair the abutting pavement. The

decision in that case went upon that fact, that it was the duty of the connecting company, and not of the defendant there, to keep in repair the pavement about the switch. The request having left out this idea of an after change in the relative position of the switch, was not one that the defendant had a right to have granted, in the terms in which it was put to the court, and the court did not err in not charging it in terms or in substance.

But the court not only declined to charge as requested, but did charge in terms, that if it was skillfully put down, and was in itself no obstruction that a person could not, with ordinary care and prudence, avoid, that proposition would be correct. This instruction was excepted to, and we are to determine whether it was legally correct. We think that it was. The streets of a city are primarily for the use of all its residents, in the most general mode of use. The sidewalks are for the whole community to pass to and fro upon on foot. The carriage way is for them to do so in their own vehicles, of a kind in customary use and in ordinary mode. Being for the use in this way, there cannot be asked of the citizen more care and prudence in going to and fro than that ordinarily put forth by men in general. True, what is ordinary care and prudence, upon a street used for no other purpose than the passage of men on foot or in the vehicles in general use, is of course less in degree than that which should be shown upon a way upon which a street railway had by right been laid down. But yet the degree of care and prudence needed upon the latter, though greater, may still be characterized as ordinary. It is that which most men, men of discretion in their conduct of themselves and their property, careful for the protection of their life and limb and property, will show in passing in such a street. Doubtless there may be in the needs of a street railway, occasion for placing in a public street some fixture that will prove a complete obstacle to passage over it by ordinary means and modes, and which all men must, of imperative necessity, turn completely aside from. But a switch, as such a thing is known to us to be, is not that fixture. It is one, the use of

which by the railway proprietor is compatible with the general use of the street by citizens. And it is incumbent upon the owner of the special franchise to use a switch put down in a manner that is consonant with the general rightful use of the same public way. That general rightful use is such use as men of ordinary care and prudence, having knowledge of the general location of the switch, will exercise when passing over that part of the public way at which the switch is laid down. The duty of the railway proprietor, and that of the citizen, are relative to each other. The former has the right to put down in the street such fixtures as are needful for the convenient use of his right of peculiar passage. The latter is bound to expect to meet such fixtures in the use of his common right of travel over the street, and is bound to use that care in approaching and passing by or over it, on foot or in vehicle, that men of ordinary care and prudence would put forth in the same locality and circumstances. This, we think, was the rule laid down in the reply of the trial court to the request to charge that we are now noticing. The purport of the whole charge is to the same end. The jury was told correctly, so far as it affected the defendant, of the right of the defendant, of the duty upon the plaintiff to put forth a greater degree of care in view of that right, and that it was such as any prudent person would use in the same place, and that though the switch might have been placed higher than it should be, the plaintiff must have used there that degree of care and caution. The court also told the jury that there was no pretense that the defendant was negligent in simply putting down the switch; by which the jury were given to know that the defendant had a right to put such a fixture in the public street; but that the claim of the plaintiff is that the switch is too high, and amounts to an obstruction, and left it to the jury to say whether, as matter of fact, that was so.

We do not find error in the reply of the court to this request to charge.

A witness by plaintiff's counsel was asked whether the switch, at the time of the trial, was as high as it was at the time of the

accident. This is the ground of an exception. We think it was not error to admit the testimony. How it was at the time of the trial, or at any time after the accident, might be got at by actual measurement, and there might be, as there was, dispute as to how it was at the time of the mischance. So testimony that it was to appearance higher or lower at any intervening time, was not incompetent, whether of more or less weight.

Squires, a witness, was asked and testified of his declarations after the accident to the superintendent of defendant's road about the switch. The defendant objected to the question calling for the testimony. The objection was overruled and an exception taken. The declarations were received. The defendant then said to the court: "Does your Honor consider that proper testimony?" To which the court replied: "I do not think that .he has proven any conversation or admissions; they propose to prove some admissions." It thus appears that the testimony was taken by the court as preliminary to evidence of admissions from officers of the defendant, which, however, were not forthcoming. The defendant then moved to strike out the declaration of the witness sworn to by him. To which the court said: "Yes." This reply of the court is to be construed no otherwise than as granting the motion to strike that testimony from the case. We find no notice taken of it after that, either in the proofs, or charge, or requests to charge; and we must look upon it that the testimony was not before the jury.

It was not error to receive testimony of the fact that there had been other accidents at the same switch. That fact was competent to be laid before the jury. It might be explained as from other cause than the switch; but as a fact, we do not see why in the first instance it was not competent. The plaintiff had a right to show that the switch caused harm to others. One step on the way to that was to show that at the place where the switch was others had been harmed.

5. The further point is made in these words: "It was error to charge the jury that 'it was for them to determine whether

the Wharton switch was made and constructed in such a way as to form an obstruction in the street, and that, if they so found, the defendants were chargeable with negligence in using the same.'" We do not find in the appeal book that this charge was made, at least not in terms. What is referred to in this point is probably this: The court was asked to charge that there was no evidence justifying the conclusion that the defendant was guilty of negligence in putting down the switch used. To which the court said: "As I understand the evidence, there is no pretense that there was any negligence in putting down the switch; in simply putting it down. What is claimed is that it is too high, and amounts to an obstruction in the street." The court also said to the jury that the defendant was not bound to put down the Johnson switch, which had been set up before the jury as the rival of the switch of the defendant that should have been preferred, and that it had already explained the rule of law of the case. The court was asked to charge that "the defendants were not chargeable with negligence in putting down the switch they did; the Wharton switch No. 2 is not an obstruction in law, properly laid." The court said: " I will leave that to the jury." We think that these remarks of the court to the jury, in answer to these requests, are not open to objection, and were a proper treatment and disposition of the requests. They took from the jury the consideration of whether there was negligence in laying down the switch, and left to them only whether the switch that was used, in the condition in which it was shown to be at the time of the accident, was too high and thus an unreasonable obstruction in the street.

6. Another point is, that the court erred in refusing to charge that the defendant was not bound to use the Johnson switch. The court did say that there was no duty enforced on the defendant to put down that switch. It charged it as matter of law. It is now claimed that charging it as matter of law did not repair the error of the refusal, because the jury were thereby authorized to find as matter of fact that it was a duty to use it. The true interpretation of the charge is, that the law, looking at all the facts as fully and forcibly as it was possible to find

them against the defendant, declared that the defendant was not in duty bound to use the Johnson switch. This took from the jury any power to find as a fact that the duty existed.

The court was asked to charge that the defendant was not bound to use the Johnson switch, and was not chargeable with negligence for using the Wharton switch. To which the court answered by a recapitulation of some of the instruction already given, and left it to the jury to say whether the Wharton switch was made and constructed in such a way as to form an obstruction in the street; and again, on being asked to instruct the jury that "the defendants were not chargeable with negligence in putting down the switch they did; the No. 2 Wharton switch is not an obstruction in law, properly laid;" the court said that it would leave that to the jury.

We must take the request and answer of the court to the first of these requests as made in view of all that had been said by the court to the jury. It had already said in effect that the defendant was not bound to use a switch of a particular patent; it had already said that the simply putting down the switch was not negligence, and that the claim was that it was too high and amounted to an obstruction in the street. As we have said, this was the same as to say that the switch in itself was not objectionable, and was objectionable only if found by the jury to have been at the time too high to be compatible with the right of the defendant to a reasonable use of the street, and, by reason of being thus too high, to have been an obstruction in the street. When, in answer to the request now under consideration, the court said it left it to the jury to determine whether the Wharton switch was made and constructed so as to form an obstruction in the street, it meant, and must have been so understood, an obstruction such as it had before spoken of, by reason of what it had before spoken of, viz.: the too great height of it above the street level.

We think that the court did fully instruct the jury that the defendant was not bound to use the Johnson switch. The clear result of the charge is, that they were not bound to use any particular kind, but could adopt that which experience

showed to be the best adapted for use in such circumstances. Because, in reply to a request of defendant, that it would charge specifically that, as matter of law, there was no duty enforced on the defendant to put down the Johnson switch, it did reply : "I think they were not, I will charge as matter of law. I have already explained what I think to be the rule of law governing this case," we do not think that the criticism is just that the court meant to say to the jury, or that the jury must have so understood it, that while as matter of law the defendant was not bound to use that switch, yet as matter of fact they might be. The care of the court was to keep the attention of the jury from the demands of any particular patent, and to direct it to the general rule that defendant must have used the appliances that experience in such matters had shown to be the best.

Thus we have gone through with the points of the appellants, by which they state to us allegations of error in the trial court. We do not discover that the trial court made error in its conduct of the case when it was before it.

The judgment appealed from should, therefore, be affirmed. All concur.

Judgment affirmed.