### CITY OF NEW YORK v. SICILIAN ASPHALT PAVING CO. et al.

(Supreme Court, Appellate Division, First Department.   July 7, 1911.)

INDEMNITY (§ 8*)—BY CONTRACTOR—CONSTRUCTION OF STREET—LIABILITY FOR INJURIES.

    A contract by a paving company with a city provided that it would construct pavement in a good manner and maintain it in good condition for five years, and that "during the performance of the work * * * will place proper guards around * * * the same to prevent accidents and * * * keep suitable lights and save the city harmless against suits for damages," and also provided by another clause that it would repair and make good the satisfaction of the engineer any cracks or depressions which should occur within five years from acceptance and when notified by the president, and that the contractor would, within five days after the receipt of notice, restore the pavement over all openings made by corporations. *Held*, that where a telegraph company within the five years opened a portion of the pavement, and the paving company after notice failed to restore it, and an accident occurred and the city was sued for injuries, the paving company was not liable to the city.

    [Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 10–15; Dec. Dig. § 8.*]

    Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by the City of New York against the Sicilian Asphalt Paving Company, impleaded with the Consolidated Telegraph & Electrical Subway Company. From a judgment for plaintiff, the Sicilian Asphalt Paving Company appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

W. Lester Glenney (Bertrand L. Pettigrew, on the brief), for appellant.

Terence Farley, for respondent.

SCOTT, J.   The defendant the Sicilian Asphalt Paving Company appeals from an interlocutory judgment overruling its demurrer to the complaint.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The complaint sets forth a contract between the city of New York and the appellant for the grading and repaving of the roadway of Forty-Fifth street from Tenth to Eleventh avenues, in the city of New York. The work of repaving was completed and accepted on June 29, 1904. Thereafter a permit was issued to the defendant Consolidated Telegraph & Electrical Subway Company to open said street for the purpose of laying a trench across it. It is said, although not material to this appeal, that the subway company agreed to hold the city harmless from any injury that might occur to persons or property in consequence of said opening; that the appellant was notified of the issuance of said permit and consented thereto, with the understanding that appellant would restore the pavement at the expense of the subway company when the latter had refilled the trench. It is alleged that on the 30th of January, 1907, the appellant was notified (by whom it is not stated) by a written notice to restore the pavement over the openings made by the subway company, but failed to do so, whereby the said pavement was allowed to be and remain in an open, defective, and dangerous condition from the time of the excavation up to and after June 9, 1907. The complaint then sets forth the particulars of an accident which happened to one Antonucci on June 2, 1907, in consequence of the defective condition of the pavement, his subsequent action against the city for damages, notice to the appellant to come in and defend, its refusal to do so, and the recovery of a judgment by said Antonucci, and its payment by the city. The relief demanded is that the city recover from appellant the amount of the judgment so paid. If the defendant is liable over to the city, the judgment in the Antonucci Case is, under the admissions implied by the demurrer, conclusive upon appellant as to the happening of the accident, the amount of damages, and the absence of contributory negligence on the part of the person injured. The plaintiff relies upon the following clauses in its contract with appellant:

"(B) The contractor will furnish all the labor and materials at his own cost and expense, necessary and proper for the purpose, and in a good, substantial, and workmanlike manner, and in strict accordance with the specifications herein contained or hereto attached, regulate, grade, and pave or repave, with asphalt pavement, on the designated foundation, the street above mentioned, and set and reset such curbstones, heading stones, etc., as may be necessary, all as herein provided, and maintain the said pavement in good condition to the satisfaction of the·president for the period of five years from the final completion and acceptance thereof. (J) * · * During the performance of the work herein set forth he will place proper guards upon and around the same for the prevention of accidents, and at night will put up and keep suitable and sufficient lights, and he will indemnify and save harmless the party of the first part against and from all suits and actions, of every name and description, brought against them, and all costs and damages to which it may be put on account, or by reason, of any injury or alleged injury to the person or property of another, resulting from negligence or carelessness in the performance of the work, or in guarding the same, or from any improper materials used in its prosecution, or by or on account of any act or omission of the contractor or his agents, and that the whole or so much of the·moneys due to the contractor, under and by virtue of this contract, as shall or may be considered necessary by the Comptroller of the city of New York, shall and may be retained by the said party of the first part until all such suits and claims for damages as aforesaid

shall have been settled, and evidence to that effect furnished to the satis-
faction of the said Comptroller. * * * (M) The contractor shall imme-
diately repair and make good to the satisfaction of the engineer any disinte-
gration, cracks, bunches, levees, or settlement or any depression in the pave-
ment that shall measure more than three-eighths (⅜) of an inch from the
under side of a straight edge four (4) feet long, which shall occur at any time
during the period of five years from the date of the acceptance of the whole
work under this contract, when notified so to do by the president by a writ-
ten notice to be served on him, either personally, or by leaving said notice
at his residence or with his agent in charge of the work. * * * During
the period of maintenance the contractor shall within five (5) days after the
receipt of notice to so do restore the pavement over all openings made by
corporations or plumbers for making new service connections, or repairing,
renewing, or removing the same, and over all trenches made for carrying
sewers, water or gas pipes or any other subsurface pipes or conduits for the
building or laying of which permits may be issued by the president. * * *
(N) The measurement shall be taken after the laying and setting of the
pavement and the completion of the work, and the aforesaid prices shall
cover the furnishings of all the different materials and all the labor; the
maintaining of said pavement in good order as often as may be required by
the terms hereof, or as the president shall direct, for the period of five years,
and the performance of all the work mentioned in the contract and specifi-
cations."

We consider that it is entirely clear that the provisions of clause
J above quoted do not sustain a cause of action upon the facts pleaded.
That clause is limited to the precautions to be taken by appellant, and
the risks to be assumed by it during the performance of the work,
which might well be held to cover work performed in making repairs,
as well as in originally laying the pavement, but cannot well be ex-
tended, by any fair construction of the language, to cover an assump-
tion of risk while no work was in progress. If the plaintiff can recover
at all, it must be under that provision of clause M, which requires
the contractor (appellant) within five days after the receipt of notice
so to do to restore the pavement over all openings made by corporations
or plumbers for certain purposes, and over all trenches for which
permits may be issued by the president.

The complaint alleges that appellant failed to comply with this
provision of the contract. For such failure the city undoubtedly was
not without remedy, such, for instance, as doing the work itself, or
by another contractor and collecting the fair cost thereof from ap-
pellant, but it is not so clear that the damages now sought to be re-
covered can be said to have been within the contemplation of the par-
ties. The case at bar differs essentially from those in which a rail-
road company in consideration of a franchise or license to use a public
street has agreed to keep in repair a portion of the street. In such
cases, it has been held that the company "in effect contracts to per-
form that duty to the public in the place and stead of the municipality,
and the way is given over to him for that purpose, and he takes it
into his care and charge therefor, and his failure to perform his con-
tract is a failure to do that duty, and the damages which naturally and
proximately result from nonperformance are all the damages which
naturally and proximately fall upon the corporation from the duty not
being performed." City of Brooklyn v. Brooklyn City R. R. Co., 47
N. Y. 475, 7 Am. Rep. 469. In such a case as that considered in the

case just cited, the person injured, as was pointed out in the opinion, would have a direct action against the company who had undertaken to keep the street in repair. In the present case there is no undertaking on the part of appellant to "keep the street in repair" during the five years succeeding the completion of the original paving, except as it may from time to time be notified to make specified repairs. What the appellant undertakes is that it will make repairs when notified so to do by the city's representative. This falls far short of assuming the obligation to the public of maintaining the condition of the street. That duty still rests primarily upon the city. O'Keeffe v. City of New York, 173 N. Y. 474, 66 N. E. 194. The case with which we now have to deal is governed by the principle laid down by the Court of Appeals in City of Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760. In that case a statute required the abutting owner to keep the sidewalk in front of his property in repair, and authorized the public authorities to repair it at his expense, if after notice he failed to repair it. An owner did fail in this duty, and a wayfarer was injured and recovered judgment against the municipality, which sought to recover over from the property owner. Chief Justice Ruger wrote a comprehensive opinion covering the whole subject, and enumerated the cases in which the city might have recovery over, including a case where one had contracted with the municipality "to keep the street in repair." He pointed out that recoveries in such actions were allowed only where the wrongdoer is responsible generally to all who are injured by his act; "in other words, the municipality by payment becomes practically subrogated to the cause of action against the tort-feasor which the injured party originally had." He then points out that the object of the statute then under consideration was not to benefit the traveling public, but to furnish to the municipality the means of discharging its duty to keep the streets in repair. This we think fairly and fully expresses the purpose of that clause of the contract upon which alone, if upon any, the plaintiff can recover. The appellant did not create the obstruction which led to the accident, and it had entered upon no undertaking to keep the street in repair. It had only agreed to repair the street when called upon and thus enable the city to fulfill its own primary obligation to the public. As between the city and the appellant the contract as to repairs does not differ essentially from the very common covenant on the part of a landlord to make repairs. Concerning such a covenant, it was said by this court:

"A contract to repair does not contemplate as damages for the failure to keep it that any liability for personal injuries shall accrue out of the defective condition of the premises, because the duty of the tenants, if the landlord fails to keep his contract to repair, is to perform the work himself and recover the cost in an action for that purpose. * * * The tenant is not at liberty, if the landlord fails to keep his contract to repair the premises, to permit them to remain in an unsafe condition, and to stay there at the risk of receiving injury on account of the defects in the premises, and then recover as for negligence for any injury that he may receive." Schick v. Fleischhauer, 26 App. Div. 210, 49 N. Y. Supp. 962.

This was the position, as we think, in which the city found itself when appellant refused to respond to the notice to repair. It might

have made the repairs at appellant's expense, but it could not permit the dangerous condition of the street to remain until an accident happened, and then insist upon charging the whole damage upon appellant. That was not within the contemplation of the contract.

The judgment appealed from must be reversed, and the demurrer sustained, with costs and disbursements, with leave to plaintiff to amend its complaint within 20 days upon payment of costs in this court and the court below.

CLARKE and DOWLING, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to concur in the opinion of Mr. Justice SCOTT for the following reasons: Under the appellant's contract, it was obligated, after putting down the pavement, to maintain it in good condition for a period of five years. The maintenance included (a) the repairing of such natural defects as might appear—e. g., cracks, depressions, etc.—and (b) the restoring of the pavement after it had been removed with the consent of the city for certain specified purposes. The appellant was not obligated to perform any of the work specified under the maintenance clause until notified by the city to do so, and, where the defect was caused by the removal of the pavement with the city's permission, this had to be restored within five days after notice given. The complaint alleges that in January, 1907, the appellant was notified to restore the pavement where it had been removed by the defendant Consolidated Telegraph & Electrical Subway Company, and up to June 9, 1907, it failed to comply with the notice or do any part of the work required, or take any precautions whatever to prevent persons lawfully using the street being injured. On the day last named a person rightfully using the street was injured on account of the defect, and subsequently recovered a judgment for $2,000 and costs against the city. The appellant had due notice of the commencement of the action, and was afforded an opportunity to defend the same. This it refused to do, and the city, having paid the judgment, seeks in this action to recover from the appellant the amount paid.

There is a primary duty resting upon the city to keep its streets in a condition reasonably safe for all of the purposes to which they may be lawfully put, and this duty it cannot as against third parties delegate to another. People ex rel. Markey v. City of Brooklyn, 65 N. Y. 349; City of Brooklyn v. Brooklyn City R. R. Co., 47 N. Y. 475, 7 Am. Rep. 469. But a contractor may for a valid consideration agree with the city to keep a street in repair, and, if he does so, he thereby assumes, at least so far as the city is concerned, that obligation; and, if he fails to do so, he at once becomes liable to the city for any damages that may be recovered against it resulting from his failure. If an injury be sustained by a person lawfully using the street, and by reason of that fact he has a recovery against the city, then it may, proper notice of the action having been given and an opportunity afforded to defend the same, recover from the contractor the amount which it has to pay. City of Brooklyn v. Brooklyn City R. R. Co.,

supra; Lowery v. Brooklyn City & Newtown R. R. Co., 76 N. Y. 28;. McMahon v. Second Ave. R. R. Co., 75 N. Y. 231; Schuster v. Forty-Second St. Ry. Co., 192 N. Y. 403, 85 N. E. 670.

It does not need the citation of authorities to sustain the proposition that, where one for a valuable consideration undertakes to keep a public street in repair and fails to perform, he thereby makes himself liable for whatever damage the city may sustain by reason of his failure. The contract in suit provided that the appellant should keep the pavement "in good order" for the period of five years, and that:

"During the period of maintenance the contractor shall, within five (5) days after the receipt of notice so to do, restore the pavement over all openings made by corporations or plumbers for making new service connections, or repairing, renewing or removing the same, and over all trenches made for carrying sewers, water or gas pipes or any other subsurface pipes or conduits, for the building or laying of which permits may be issued by the president."

The complaint alleges that at the time stated therein, at the special instance and request of the Consolidated Telegraph & Electrical Subway Company, the president of the borough of Manhattan issued and granted to it permission to open the pavement across the street covered by the appellant's contract, which permission was granted after due notice to the appellant, and with its consent, and upon the express understanding that it would restore the pavement. After the opening had been made, the city gave the notice required by the contract to the appellant to restore the pavement. It failed to do so, and by reason of that fact the city was subjected to damages. Of course, it could have made the repairs itself, but, having contracted with the appellant to do so, it had a right to rely upon the contract, and, in case it was. subjected to damages for not keeping the street in proper condition, look to the appellant for whatever it had to pay. This is precisely what occurred, and, upon the facts alleged, I think the complaint states a cause of action, for which reason the judgment should be affirmed with costs, with leave to the appellant to withdraw its demurrer and answer, on payment of costs in this court and in the court below.

INGRAHAM, P. J., concurs.

