(58 App. Div. 514.)

TALCOTT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 22, 1901.)

1. MUNICIPAL CORPORATIONS—SEWERS—OBSTRUCTIONS.
     It is the duty of a city to use reasonable watchfulness and care in preventing sewers under its control from becoming obstructed by ordinary use.

2. SAME—INJURIES TO ABUTTING OWNER—NEGLIGENCE—EVIDENCE.
     Where a sewer, under the control of a city, becomes obstructed by ordinary use, and an abutting owner's property is injured thereby, a presumption of negligence arises calling upon the city for an explanation, and, in case of its failure to show that reasonable watchfulness and care have been exercised to keep the sewer in proper order, a finding that there was negligence will be sustained.

     Van Brunt, P. J., and O'Brien, J., dissenting.

Action by James Talcott against the city of New York. The complaint having been dismissed, plaintiff moved for a new trial on exceptions. Exceptions sustained, and motion granted.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Albert B. Boardman, for plaintiff.
Theodore Connoly, for defendant.

INGRAHAM, J. The action was brought to recover the damages sustained by the plaintiff in consequence of an obstruction in a public sewer, which resulted in the overflow of the plaintiff's premises, causing damage. There is no claim that the sewer was improperly constructed, but it is alleged that the sewer became obstructed, and that in consequence thereof the sewage backed up into the plaintiff's premises. It appeared that on the afternoon of March 23, 1897, the cellar of the plaintiff's premises, No. 83 Vandam street, in the city of New York, became flooded with water six or seven inches deep. The plaintiff's premises were not directly connected with the sewer, but there was a broken stone drain constructed along the west wall of No. 83 Vandam street, and the floor was so graded that the water would flow to this drain, and be carried off through a drain pipe con-

necting No. 85 with the sewer. This arrangement was only to drain the cellar floor, as there were no water-closets or running water in No. 83. The 23d of March was a clear day, no rain having fallen, and the cellar was dry on the morning of that day and on the day before. Upon an examination of the sewer, it was found that it was full of water in front of the plaintiff's premises, but at the corner of Greenwich street, some distance to the west, there was no water, and the sewer from there on was clear. Between 10 and 11 o'clock the next morning some workmen came and cleaned out the sewer, and finally removed the obstructions, when the water was carried off from the plaintiff's premises. Nothing of this sort had ever happened in this cellar before. It is quite evident from this testimony that the flooding of the plaintiff's cellar was caused by an obstruction in the sewer between the plaintiff's premises and Greenwich street, but there was no evidence as to how long the obstruction had continued. The facts upon which the plaintiff relies to sustain a finding that the defendant was negligent are that this sewer was constructed by and under the exclusive control of the defendant, and the plaintiff and other property owners had no power to inspect or remove obstructions therefrom; that some time prior to the afternoon of March 23, 1897, the sewer became obstructed without any severe rain or other extraordinary condition, and such obstruction caused the water from the sewer to come into and upon the plaintiff's premises; that this flow of water from the sewer into the plaintiff's premises caused the plaintiff the damage for which this action was brought to recover; and that in sewers of this character obstructions occur due to the gradual accumulation of solids from the sewage, and that the smaller the sewer the more likelihood there is that such an obstruction would occur. It was admitted by the parties that, if the plaintiff was entitled to recover anything in the action, his damages were to be $1,286.10, with interest from March 24, 1897. The court dismissed the complaint, to which the plaintiff excepted, and the question arising upon this exception is the only one now insisted upon by the plaintiff.

When the defendant constructed this sewer, it did so for the benefit of the property adjoining on the street through which it ran, and it then assumed the obligation to provide a sewer competent to carry off the ordinary flow of water, and to maintain it in such a condition that it would fulfill the purpose for which it was constructed. The sewer was capable of doing the work that was required of it; that is, to carry off all of the sewage flowing into it from the houses with which it was connected, and a failure to maintain the sewer in this condition would be negligence for which the defendant would be responsible. The principle upon which such a liability has been imposed was stated by Chief Judge Nelson in Mayor, etc., v. Furze, 3 Hill, 615, as follows:

"If, therefore, we concede that the exercise of the power was, in the first instance, optional on the part of the corporation, yet, having elected to act under it, they must be held responsible for a complete and perfect execution. It would be highly unjust to allow that, after constructing these works, the corporation might refuse to keep them in repair, and thus leave the street on which they have been placed in a worse condition than before they were put there. The owners and occupants of houses and lots in the neighborhood, hav-

ing been charged with the expense of the sewers, acquired a right to the common use of them, and a corresponding duty devolved upon the corporation to keep them in proper condition and repair. This is too obvious to require either argument or authority."

I know of no case in which this obligation of a municipal corporation has been questioned. In Mills v. City of Brooklyn, 32 N. Y. 499, Chief Judge Denio, in speaking of Mayor, etc., v. Furze, supra, says: "The judgment was placed upon the ground that it was the duty of the corporation to preserve and keep in repair erections which they themselves constructed, so that they should not become sources of nuisance to the adjacent proprietors;" and, while some of the observations of the chief judge in the opinion were criticised, the obligation of the city where the sewers had been suffered to be out of repair, on account of which the plaintiff's premises were overflowed, was recognized and sustained.

In Barton v. City of Syracuse, 36 N. Y. 54, the same question was presented. It is there said:

"Under this condition of authority and duty, the municipal corporation was bound, through the proper officers, to a faithful and prudent exercise of power, and carelessness and negligence in that regard created a liability which might be enforced by any one suffering damages therefrom. So the law is firmly established that, in constructing sewers and in keeping them in repair, a municipal corporation acts ministerially, and, having the authority to do the act, is bound to the exercise of needful prudence, watchfulness, and care. * * * It is also insisted that the recovery is erroneous because there was no proof of notice to the corporation of the needed repair before the injury complained of occurred. Such notice, however, was not necessary in this case. The injury here resulted from an omission of duty,—a neglect to do an act which it was incumbent on the defendant to perform."

In McCarthy v. City of Syracuse, 46 N. Y. 196, the same rule of liability was applied; and Rapallo, J., in delivering the opinion of the court, says:

"But where a sewer had been determined upon and is constructed, all the authorities agree that the duties of constructing it properly and keeping it in good condition and repair are ministerial, and that negligence in the performance of those duties will render the city liable for damages resulting therefrom."

That case was tried before a referee, who found as a fact that the defendant was guilty of negligence in permitting the sewer to become obstructed and out of repair. The defendant contended that there was no such negligence, as none of the officials of the city had notice that the sewer was obstructed or out of repair. In answer, the court said:

"The mere absence of this notice does not necessarily absolve the city from the charge of negligence. Its duty to keep its sewers in repair is not performed by waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of the officials is called to the damage they have occasioned by having become dilapidated or obstructed, but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omissions to make such examinations, and to keep the sewers clear, is a neglect of duty which renders the city liable. * * * If the appellant has shown that the sewer was constructed in a workmanlike manner, and that care had

been exercised to keep it in proper order, and that, notwithstanding this care, it had caved in, then their want of notice of the injury in season to repair it would have excused them, and this court would be justified in reversing the finding of negligence. But nothing was shown as to the mode of construction of the sewer, nor was it proved that any examination of it had ever been made since it was built. How long it had been falling into the condition in which it was finally found, or from what cause it became so dilapidated, are left to conjecture."

We have in these cases a statement of the duty that is imposed upon municipal corporations in relation to its sewers. This duty "involves the exercise of a reasonable degree of watchfulness in ascertaining their condition from time to time, and preventing them from becoming dilapidated or obstructed." They are not absolved from such duty by waiting to get notice of the fact of obstruction, and if they neglect to perform this duty of "watchfulness in ascertaining their condition, from time to time," they are liable for any injury that results from an obstruction which an inspection would have disclosed.

We are, then, confronted with the question as to what evidence is necessary to show that this duty to exercise "watchfulness in ascertaining their condition" was not performed. Judge Rapallo says in McCarthy v. City of Syracuse, supra:

"Where the obstruction or dilapidation is the ordinary result of the use of the sewers which ought to be anticipated, and could be guarded against by occasional examination and cleansing, the omission to make such examination, and to keep the sewers clear, is a neglect of duty which renders the city liable."

Thus, the fact that a sewer became obstructed by its ordinary use, there being no evidence that such an obstruction was caused by any unusual or exceptional condition, and that such an obstruction was liable to be caused by the gradual accumulation of solids from the sewage, is, it seems to me, sufficient evidence to require from the defendant an explanation as to its watchfulness in ascertaining its condition from time to time, and preventing it from becoming obstructed. And the absence of such an explanation would justify the jury in finding that the defendant had been negligent in the performance of this duty. Where the law imposes upon a municipal corporation the duty of exercising a reasonable degree of watchfulness in ascertaining the condition of a sewer from time to time, and preventing it from becoming obstructed, it is certainly some evidence that this duty has not been performed when the sewer becomes obstructed without any cause except the ordinary use to which the sewer has been put. From the very nature of things, it would be impossible for the plaintiff to prove that the city has not inspected the sewer. It seems to me that the case is analogous to that of a common carrier, in which it is held that, where an accident is caused by any deficiency in the road itself, the cars, or any portion of the appliance belonging to the company, and used in connection with the business, a presumption of negligence on the part of those whose duty it was to see that everything was in order immediately arises; it being extremely unlikely that any defect should exist of so hidden a nature that no degree of skill or care could have foreseen or discovered it. "If it appears that the mischief has resulted from a defect in some part of the appa-

ratus of the company, the negligence, if any, must have been that of some one for whose acts and omissions the company is liable; it being well settled that the carrier is responsible for the negligence or want of skill of every one who has been concerned in the manufacture of any portion of its apparatus." Curtis v. Railroad Co., 18 N. Y. 538. And in Griffen v. Manice, 47 App. Div. 70, 62 N. Y. Supp. 364, the principle was applied to a person injured in a passenger elevator in a building owned by the defendant; and that, "as inspection, general attention, and observation were necessary in order to keep it operating properly," the occurrence of the accident was evidence that such inspection, general attention, and observation had been neglected. The negligence charged in this case is a neglect to exercise watchfulness and care to prevent the obstruction. The sewer was under the exclusive control of the defendant. . The obstruction was occasioned from no cause, so far as appears, except the ordinary use to which it was put. It was the duty of the defendant to prevent the sewer from becoming obstructed by such ordinary use, and, when it did become obstructed, there is, I think, a presumption that such obstruction was caused by the neglect of this duty imposed upon the defendant which at least called for an explanation. In this case, as in McCarthy v. City of Syracuse, supra, "if the appellants had shown that the sewer was constructed in a workmanlike manner, and that care had been exercised to keep it in proper repair, and that notwithstanding this care it had caved in, then their want of notice of the injury in season to repair it would have excused them." In that case it was held that as the defendant had failed to prove that care had been exercised to keep the sewer in order, or that it had been duly inspected, a finding of negligence was sustained. If that be so, then upon the evidence as it stood in this case, unexplained by the defendant, a finding that it was guilty of negligence would have been sustained.

I can find nothing in the cases to which our attention has been called which is to the contrary. In all of the cases where a judgment for the defendant has been sustained, there was evidence to show that the obstruction in the sewer, or the overflow of water, was caused by some exceptional condition, or that some other fact existed which negatived the presumption of negligence. Thus, in Smith v. Mayor, etc., 66 N. Y. 295, it was found as a fact that the overflowing of the sewer and flooding of the plaintiff's premises was caused by the stoppage of the sewer with sand, dirt, and refuse matters washed in from the streets; that at or just before the time of the overflow there was an unusually heavy shower; that there was no proof of any knowledge on the part of the defendant of any defect or bad condition of the sewer prior to the occurrence, or of any notice to it of such condition; and the judgment was affirmed upon this finding of fact. The court held that they were not at liberty to consider any facts except those found by the referee; that "it is found upon sufficient evidence that the overflow was caused by a stoppage of the sewer with sand, dirt, and refuse matter washed in from the street; and that at or just before the flooding of the plaintiff's premises there was an unusually heavy shower of rain. There is no proof of any obstruction before

that time. There being no fault in the construction of the sewer, causing the overflow, it was incumbent upon the plaintiff to show a neglect by the defendants to remove the obstruction after notice of its existence, or some omission of duty on the part of the city officers in looking after it, and seeing that no obstruction occurred. There was no evidence, and there is no finding, that the sewer was liable to become obstructed, under ordinary circumstances, so as to require the watch and care of the officials to prevent its becoming filled and choked with the wash of the street, or that it had been obstructed for any time, and under circumstances from which it might be assumed that the officers of the city did know, or ought to have known, the fact." So, in Hunt v. Mayor, etc., 109 N. Y. 142, 16 N. E. 320, the action was brought to recover for the damages sustained by an explosion of steam pipes maintained by a private corporation in the streets of the city, and a dismissal of the complaint was sustained because, from the whole evidence introduced by the plaintiff, it was held that there was no evidence of the defendant's negligence. The court, however, expressly reserved the question presented in this case, as it was there said:

"The plaintiff did not rest his case on the mere proof of the happening of the accident, and it is unnecessary to consider whether, in the absence of any evidence in the case beyond that, a presumption of negligence would have arisen which would have called on the city for an explanation. * * * The plaintiff has, without fault on his part, suffered a serious injury, but we think the evidence offered by him, taken together, not only does not tend to show any negligence on the part of the public authorities, but rather to exempt them from the imputation of negligence."

And so in the case of Jenney v. City of Brooklyn, 120 N. Y. 164, 24 N. E. 274, where the action was brought to recover for the damage caused by the escape of water from a fire hydrant. The fire hydrant was found detached from the main water pipe, and resulted in allowing a stream of water to flow from the pipes out upon the plaintiff's premises. The evidence was uncontradicted that the fire hydrant was of the best of its kind; that the work of placing it was successfully done, and that when completed it was a good job; and it was held that upon that evidence the jury were not justified in finding that the injury was due to the negligence of the defendant in constructing the hydrant. In these cases the defendant had made its explanation, and had established without contradiction the facts necessary to rebut presumption of negligence. In a case much like the one now before us, this court in the Second department held that the defendant was called on to explain what was the difficulty with the sewer on the particular occasion, and that it was not responsible for that difficulty. Magee v. City of Brooklyn, 18 App. Div. 22, 45 N. Y. Supp. 473.

We recognize the doctrine established in all these cases that there is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other structures shall at all times, and under all circumstances, be in a safe and perfect condition, and that its obligations and duty extend only to the exercise of reasonable care and vigilance. The question that we have been discussing is one that relates solely to the evidence which would sustain a finding of negli-

gence to perform this duty. But where an appliance like a sewer is under the exclusive management and control of the municipal officers, upon whom there is imposed an active duty of watchfulness and care to prevent an obstruction which would result in causing damage to abutting property, and, without the happening of any extraordinary event which would cause an obstruction, the sewer became obstructed, and an abutting owner's property was injured thereby, it seems to me that the case is one from which such a presumption of negligence arises as would call upon the defendant for an explanation; and, in the case of a failure of a defendant to show that watchfulness and care had been exercised to keep the sewer in proper order, a finding that there was negligence would be sustained. As was said in Clarke v. Railroad Co., 9 App. Div. 51, 41 N. Y. Supp. 78: "The doctrine of res ipsa loquitur simply calls upon the defendant, after proof of the accident, to give such evidence as will exonerate him if any there be, and relieves the plaintiff from the burden of proving the nonexistence of an adequate explanation or excuse." I can see no reason why this should not in this case apply.

It follows that the exceptions should be sustained, and the motion for a new trial granted, with costs to the plaintiff to abide the event. PATTERSON and McLAUGHLIN, JJ., concur.

VAN BRUNT, P. J. (dissenting). I do not see how the city can be held to be liable in this case. The trouble was remedied within a reasonable time after it was discovered, and this seems to be the rule of diligence which is exacted to be observed by the city. It has never yet been held that the city is liable for defects which neither it nor any one else knew anything about, and which it did not create. It cannot be that the city can be held liable unless it is shown that the defect has existed for such a length of time that notice to the city can be presumed. This seems to be the basis in all cases of the city's liability. No evidence of this kind was offered in this case, and therefore the motion should have been denied.

O'BRIEN, J., concurs.