(77 App. Div. 53.)

### SUNDHEIMER v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 14, 1902.)

1. SEWERS—OVERFLOW—LIABILITY OF CITY—NEGLIGENCE—DIRECTION OF VERDICT.

Evidence examined, in an action against a city for injury to plaintiff's property owing to the overflow of a sewer, and *held* that a verdict for defendant was properly directed; no negligence on its part appearing.

2. SAME—LIABILITY OF CITY—CAUSE OF OVERFLOW—UNPRECEDENTED STORM.

Where a municipality has constructed and maintained a sewer adequate for all ordinary purposes, it is not liable for injuries to abutting owners caused by an overflow of the sewer due to a storm of extraordinary violence.

O'Brien and Hatch, JJ., dissenting.

Appeal from trial term.

Action by Henry Sundheimer against the city of New York. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Jacob Friedman, for appellant.

Theodore Connoly, for respondent.

McLAUGHLIN, J. On the 24th of August, 1901, certain personal property belonging to the plaintiff was injured by the overflow of a sewer which extended past his premises, and this action was brought to recover from the defendant the damages sustained, upon the ground that the same were caused by the negligence of the city of New York in the construction and maintenance of the sewer. The answer denied defendant's liability, and alleged as an affirma-

¶ 2. See Municipal Corporations, vol. 36, Cent. Dig. § 1779.

tive defense that whatever damages were sustained by the plaintiff were the result of a storm of unusual severity, "which the defendant had no reason to anticipate and was helpless to guard against." At the conclusion of the trial a verdict was directed for the defendant, and from the judgment thereafter entered plaintiff has appealed.

The damages sustained by the plaintiff by reason of the overflow of the sewer were not litigated at the trial,—the defendant there stipulating that the plaintiff was in fact injured to the amount of $300. The fact, however, that the plaintiff sustained damage, did not, in and of itself, entitle him to recover the same from the city. To entitle him to such recovery he was obligated to prove the other facts alleged in the complaint,—viz., that the overflow was due to the negligence of the city in the construction of the sewer in the first instance, or its maintenance thereafter. The evidence adduced upon the trial failed to establish either one of these essential facts.

First, as to the construction of the sewer. It appeared that it was built according to a well-recognized and approved plan, and according to the testimony of plaintiff's own expert, when completed, was considered by the best engineers in the city a "good sewer"; and in this he was corroborated by defendant's experts. According to their testimony the sewer was constructed according to a recognized formula for the construction of sewers; that according to this formula the area to be drained was ascertained, and the capacity of the sewer calculated upon the theory of a possible rainfall of one inch per hour within that territory, and also what had or might be built upon territory in the locality to be drained by the sewer. Taking into consideration all of these facts, the sewer is "sufficient in capacity to carry off the ordinary rain that will fall, viz., one inch per hour in that watershed district." In this connection it is worthy of note that at a certain stage of the trial the plaintiff's attorney conceded—though the concession was afterwards withdrawn—that the sewer was properly constructed "as far as the knowledge of engineering at that date went." Therefore, as to the construction, there was absolutely no evidence offered upon the trial which would have justified a finding to the effect that the city was negligent in any respect, either as to the·location, construction, or outlet of the sewer.

Its liability to the plaintiff, if it be liable at all, must therefore be based upon its negligence so far as the same related to the maintenance of the sewer after it had been constructed; and upon this branch of the case plaintiff also failed. What the plaintiff attempted to prove was that the sewer was of insufficient capacity; that the defendant had neglected to clean it; that dirt had been permitted to accumulate in it, which diminished its capacity to a large extent; and by reason thereof, the overflow was caused. The testimony of some of plaintiff's witnesses tended to show that the sewer had overflowed on different occasions, and that they had not seen it cleaned; but, as against this, the testimony of plaintiff's own witness Mulcahy showed that it was cleaned within a few days after a storm which occurred on the 5th of July preceding the one which occurred on the 24th of August, when plaintiff sustained his damage, while defendant's witness Byrne, whose duty it was to examine and· clean the

sewer, including the receiving basins, etc., in that section of the city, testified that the same was cleaned in front of plaintiff's premises on March 26, 1901, and also on the 10th of July following. There was also testimony to the effect that the sewer was from time to time thoroughly inspected and cleaned. The negative testimony, therefore, of some of plaintiff's witnesses, to the effect that they had not seen the city authorities clean the sewer, was overcome by the positive affirmative evidence of the witnesses referred to, to the effect that the sewer was in fact cleaned.

What caused the sewer to overflow at the time in question is apparent. There was on that day a very severe storm, the severity of which, according to the testimony of one of the defendant's witnesses, had been exceeded by only four storms in over 30 years,—a storm in which over an inch of water fell the first hour, and nearly two inches and a half in six hours. Loose earth, rubbish, etc., were carried into the receiving basins, which, during the early part of the storm, became clogged, and thereafter the water, being unable to escape through them into the sewer, was carried into the basements, cellars, and houses located along its line. There is no doubt that the plaintiff was injured, as doubtless many others were; but the defendant was not responsible for it. It was not bound to anticipate a storm of this character. All that was required of it, when it built the sewer, was that it should adopt a plan that was reasonably calculated to subserve the part of the work according to the needs of the present, and those of the future so far as they could be reasonably anticipated, and to thereafter properly care for it. This it did so far as appears from this record.

Stress is laid by the appellant upon the case of Talcott against this same defendant (58 App. Div. 514, 69 N. Y. Supp. 360). There this court held, where a sewer overflowed, that, in the absence of facts showing the cause, a burden was cast upon the city to explain. Here the city assumed that burden and established by uncontradicted evidence the cause of the overflow, viz., a storm of unusual severity. The case of Seifert v. City of Brooklyn, 101 N. Y. 137, 4 N. E. 321, 54 Am. Rep. 664, is clearly distinguishable from this one. No evidence whatever was offered which would have justified a finding that the sewer was not, as already said, properly constructed, or that it was not thereafter properly maintained, including the receiving basins and outlets. Where a municipality has thus constructed and maintained a sewer adequate for all ordinary purposes, it is not liable for injuries caused by an extraordinary storm of the character of the one which occurred at the time stated in the complaint. A man of ordinary prudence and good judgment would not be required to anticipate such a storm, and certainly no more can be required of the city than could be of him.

The judgment appealed from must therefore be affirmed, with costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

O'BRIEN, J. I dissent from the conclusion, reached by the majority of the court in this case, that the plaintiff failed to present evi-

dence from which the inference of negligence might be drawn in respect to the construction and maintenance of the sewer which caused the overflow on the 24th of August, 1901. It is proper, therefore, to briefly summarize the evidence given at the trial which in my opinion required a submission to the jury of the issues of fact, instead of a direction of a verdict in defendant's favor by the court. The premises occupied by the plaintiff are on 169th street, at Washington avenue, and in what is known as the "Mill Brook Watershed." To drain this territory, the Brook avenue sewer, running from 165th street to the Bronx Kills, was constructed in 1879. This sewer was subsequently extended to Webster avenue, and thereafter continued up Webster avenue to 184th street, and from thence further continued to Mosholu Parkway, and thence in 1899 to 205th street, with branches to the west. A temporary sewer was then built to the east, connecting with the Williamsbridge system which is largely beyond the Mill Brook watershed. Meanwhile the 169th street sewer, leading into Webster avenue past the plaintiff's premises from Franklin avenue to the east, was constructed. Although these branches and additional sewers were for the most part within the district for which the Brook avenue sewer had been constructed to drain, the sewers were all designed, besides the surface water, to carry off waste water from the houses. As testified by the defendant's engineer:

"There have been a great many houses built there,—quite a number; and every house that is built up has a number of waterclosets and sinks and cesspools and drains which connect with the sewers, and all of these drain into the Webster avenue sewer, and all the time from 1872 down there have been constant additions to the burden that the Webster avenue sewer has to carry off."

In this connection it was testified that there were other overflows prior to August 24, 1901, and many complaints were made to the officials; and the defendant's engineer admitted that he had received complaints as far back as the latter part of 1896. One witness testified that she had herself made six or eight complaints, one having been five years ago, and that the sewer basins became stopped upon occasions of ordinary storms,—even slight storms she had seen that,—and carried away no water. Another witness testified that there had been overflows in January, 1901, on July 5, 1901, and on August 24, 1901; and it was further testified that in November, 1900, and March and April, 1901, there were overflows. Finally, testimony showing notice to the city was excluded on the ground that it was cumulative; the court stating that defendant's counsel admitted as matter of law that the city had sufficient notice.

More particularly with regard to the cause and the character of the overflow in question, it was testified that in a few moments after the rain began the water overflowed into the basement, the street was covered with water, and the drains, closets, sinks, and drains backed up and ran over, the water being muddy and full of sticks and débris; and a manhole in the street at this point blew open, and water spouted three or four feet in the air. One witness, who had examined the basin at the time, said it was full of mud and slush up to within a foot of the top, and that prior thereto, and back as far as April, 1901, he

had seen this basin clogged up with mud up to a foot and a half of the top, and that he had taken off the top to get balls for the boys who played there in the street, and stood on the top of the mud, which was hard and dry, and this was a constant occurrence all through the summer, and the basin at the time of the storm did not act at all. Upon this subject, an engineer testified for the plaintiff that anything above two feet in the basin would retard the flow, and if it extended to within a foot of the top, it would stop the flow entirely. Another witness testified that ever since the basins were built they have been a source of annoyance, and the buildings have twice filled up with water prior to July 5, 1901, and from ten years ago she had seen the basins refuse to carry water three or four times a season. A witness testified that after this storm the mud was a foot and a half thick in his cellar. The director of the Meteorological Observatory of Central Park testified that the rainfall on August 24th was altogether 2.47 inches, of which 1.08 fell between 1 and 2 o'clock, which was not as hard as the storm July 5, 1901, and that there are storms on record heavier and longer, notably September 22, 1882; and an examination of the records of the Observatory shows that during the last 31 years there have been 42 storms where the precipitation has exceeded one inch per hour, for which, it was testified, the Brook avenue sewer was constructed to provide. It further appears that since August 24, 1901, more adequate provision has been made for the drainage of this locality.

We have not overlooked the evidence given in behalf of the city, and which is set forth in detail in the opinion of Mr. Justice McLAUGH-LIN, that there had been constant inspections, and that a short time prior to the storm which did the damage the basins had been cleaned. This, however, was not conclusive, because, on the question of the credibility to be attached to the witnesses whose testimony was thus opposed, we have the actual occurrence, at the time of the storm, showing that the sewer was insufficient, that it did not carry off the water, and that this was so, not alone because the storm was one of unusual severity, but, if the testimony of the plaintiff is to be believed, because the sewer at that time was clogged, and had placed upon it a burden, in the shape of all these lateral sewers, greater than its capacity. We do not claim, on the other hand, that the testimony showing that the sewer was clogged and that it was insufficient is conclusive; but we do think that there were presented questions of fact, first, as to whether it was the part of prudent management to add to the original area which the sewer as constructed was intended to drain, and also as to whether, if reasonable care had been exercised in inspecting and keeping the basins cleaned, they would have been in the condition testified by the witnesses on the day of the storm. In other words, upon the entire evidence, I think there were questions of fact for the jury as to whether it was negligence of the defendant to add the new sewers to the old one, and to disregard the complaints and fail to remedy the defects, and whether the city had negligently permitted the basins to be and remain clogged and useless. Even though it be conceded that the original construction of the sewer was sufficient, there was evidence to justify the inference that the burdens further imposed upon it by extending the area which it was to drain and by

making other lateral connections, which increased the quantity of water and sewage to be carried off, rendered it entirely insufficient, as shown by the frequent occasions when it overflowed, resulting in the numerous complaints to the city authorities, which, as admitted on the trial, brought home notice to them of its insufficiency. I think the facts bring the case within the rule laid down in Seifert v. City of Brooklyn, 101 N. Y. 137, 4 N. E. 321, 54 Am. Rep. 664, where, as here, there was evidence sufficient to justify the inference that the city had failed to provide proper and efficient drainage, and the judgment dismissing the complaint was accordingly reversed.

I think, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

HATCH, J. (dissenting). I think the judgment in this case should be reversed, on the ground that upon the evidence a question of fact was presented for determination by the jury as to whether the defendant was guilty of negligence in failing to exercise reasonable care in inspecting and cleaning the sewers which overflowed, and whether the damages which the plaintiff sustained were occasioned by such neglect. Upon this subject I concur in the opinion of Mr. Justice O'BRIEN. Upon the other question, the proof seems to be insufficient to show any negligence, sufficient to support a verdict for the plaintiff, in the plan and construction of the sewer, or in the burdens which have been placed upon it since its construction.