WALTER M. HUNT, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

There is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other constructions shall at all times and under all circumstances be in a safe and proper condition. Its obligation and duty extend only to the exercise of reasonable care and vigilance; and to create liability, willful misconduct or culpable neglect must be established.

The mere existence of a defect, rendering a street unsafe, from which a traveler sustains an injury, where the defect was not created by the act or consent of the municipality, does not, independent of negligence, establish a culpable breach of duty on its part.

In an action to recover damages for injuries from an explosion at one of the man-holes of a steam-heating company at the junction of Broadway and Maiden lane, in the city of New York, it appeared that said company was organized under the General Manufacturing Act (Chap. 40, Laws of 1848 ; chap. 317, Laws of 1879), and that under the authority given such companies by the act of 1879, and with the requisite consent of the municipal authorities and in compliance with the other provisions of the act, said company laid its pipes in said streets. The explosion in question was shown to have been caused by an accumulation of gas, occasioned by an interference by the steam company in laying its pipes with the gas pipes, which sagged, owing to the settlement of the earth replaced in the excavation made by the company, although everything possible was done to prevent it, and when the steam was let in the lead of the gas pipes softened so that they leaked, and the covering to the man-hole being air-tight, an explosion ensued. There was no proof that the steam pipes were improperly located, or that any different

location was practicable, or that a man-hole was not a proper arrange-ment, or that there was any lack of care in conducting the work. The laying of steam pipes for the purpose for which these were intended was a new enterprise. Subsequent to the explosion perforated coverings were used, and no explosion thereafter occurred. The complaint was dismissed. *Held*, no error; that no negligence could properly be imputed to the defendant.

(Argued March 8, 1888; decided April 10, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made June 1, 1885, overruling plaintiff's exceptions and directing a judgment dismissing the complaint. (Reported below, 20 J. & S. 198.)

This action was brought to recover damages for injuries received by plaintiff on the 27th day of January, 1883, while lawfully passing along Broadway in the city of New York, by an explosion at one of the man-holes of the American Heating and Power Company, at the junction of Broadway and Maiden lane.

The American Heating and Power Company was the assignee of the rights and franchises of the United States Heating and Power Company. Both corporations were organized under chapter 40 of the Laws of 1848, entitled "An act to authorize the formation of corporations for manufactur-ing, mining, mechanical or chemical purposes," and the amend-ments thereto.

By chapter 317, of the Laws of 1879, power was given to steam-heating companies organized under the act of 1848, or under any of the amendments thereto, to "lay pipes or con-ductors for conducting hot water, hot air, or steam through the streets, etc., of any city, village or town, with the consent of the municipal authorities of said city, town or village, and under such reasonable regulations and conditions as they may prescribe." The act also provides that the permission of the municipal authorities shall only be granted on the condition that reasonable compensation shall be paid therefor, and a satisfactory bond given to secure the municipality against all damage in the use of such pipes.

On the 16th of March, 1880, the common council of the city of New York passed an ordinance granting permission to the United States Heating and Power Company, its heirs, successors or assigns, to lay mains and pipes in the streets of the city, with such connections as may be required for the purpose of conveying water and steam to supply heat and power to the city and its inhabitants for domestic and other purposes, upon certain conditions specified in the ordinance. These conditions were that the company should furnish to the department of public works a map of the proposed work, and of the position of the mains and pipes; execute a bond to the city in the sum of $50,000, to protect the city against any accident that may occur under the permission given; furnish such heat and power as should be required for streets and public buildings at prices to be fixed by the board of estimate and apportionment; pay to the comptroller of the city in each year a sum equal to three cents for each lineal foot of mains laid, and two per cent of the net profits for the year, and the city reserved to the department of public works the right to change the position of the mains or pipes whenever they should interfere with free access to the sewers, mains and pipes belonging to the city.

After the assignment by the United States Heating and Power Company of its rights and franchise to the American Heating and Power Company, the latter company proceeded, under the permission given by the city to dig in Broadway and the connecting streets in the lower part of the city, and laid down therein iron pipes for the purpose of conducting steam " and for the use and convenience of the company in so doing, the said company made a man-hole at the junction of Maiden lane and Broadway, large enough to go down in, from the surface of the street to the pipes, which were laid five or six feet under ground." On the trial two witnesses were examined for the plaintiff, viz., one Madden, acting superintendent of the Mutual Gas Light Company, and one Culver, a city inspector of the laying of pipes of the steam companies in the city. Madden testified that the steam pipes

were laid about two and a half feet below the pipes of the gas company; that the gas company had an inspector present all the time to protect its mains and service pipes while the workmen of the heating company were excavating, and that he (the witness) was present very often for the same purpose; that the steam pipes were laid in boxes of wood in a composition of glass, lampblack and other more or less non-conducting substances; that the digging interfered with the pipes of the gas company, and they had to be protected and held up by chains while the work was being done; that the gas company protected its pipes as well as it could, but after replacing the earth the gas pipes leaked. The witness further testified: "He could not say there was anything wrong in digging out and replacing the earth, but he testified that after replacing the earth it did settle a good deal, and would have settled however well stamped; that in settling it did displace the gas pipes, cause them to sag or go down, and shook the joints; everything was done that was possible to be done to prevent any sagging; after the steam was let in the steam pipes the ground became very warm and the lead in the gas pipes became very soft; that, at the place where the man-hole was at the junction of Maiden lane and Broadway, the steam pipes crossed the gas pipes, and there was a general meeting of all the steam pipes in this man-hole. They run both ways or along both streets. The man-hole was made of bricks and cement, with two iron covers over it. When the explosion occurred, this witness, who was near by, went there immediately, and, finding a fire burning the wooden case of the steam pipes down in the man-hole, went down and put it out.

There was an explosion the day before from the same cause where the steam and gas pipes met at the corner of Nassau and Fulton streets. That the American Heating and Power Company turned off its steam and abandoned its business and the pipes two or three days before the explosion occurred; but at the time of the explosion the witness found the steam pipes there quite hot. Since then another steam company

has laid pipes along the streets, and used them, and still uses them for the same purpose, and the witness has heard of no explosion since. Those pipes are laid differently. They are laid in a round wooden pipe-like box, and have sleeve or flange-joints, whereas the others had ordinary screw joints, couplings and screws."

The witness Culver testified that he was water purveyor for the city and was, at the time of said explosion, general inspector of laying pipes for the various steam companies of the city ; that he was at the scene of the explosion within ten minutes after it occurred ; that he saw a large crowd of people ; that the man-hole was blown out ; that he did not see any steam escaping ; that he looked into the matter further and of course formed an opinion, although he had no definite knowledge ; that he looked into the man-hole from the top. In reply to a question whether from the examination that he made and his experience in laying pipes, and his knowledge of matters of that kind, he could tell the cause of the explosion, he answered that there could be only one cause that he could see ; that, of course, he did not know that that was it, but the only cause that he could see for it was an accumulation of an illuminating gas which became, in some manner, ignited, and an explosion took place ; that that was his opinion ; that further than that he had no knowledge, of course, but could not see that there could be anything else ; that the gas accumulated in the man-hole of the heating company ; that he presumed that there was a way to avoid such accumulation, but that was by filling the man-hole up ; that if the man-hole had not been air-tight he presumed the gas would have escaped.

In reply to a question whether, in his opinion, it would not have been the proper way to make the man-hole not air-tight, he replied that the accumulation of the gas was not expected, and that there was no means of knowing that the gas would accumulate. Previous to that time he had not advised the city to have the man-holes made with openings. He recommended it immediately after these explosions. There were two or three explosions which occurred together and he thought there

might be some reason for it.　He investigated it and formed his own opinion and recommended that perforated covers be put on at once, and since that time there have not been any explosions.

The court at the conclusion of the plaintiff's evidence, dismissed the complaint.　The plaintiff duly excepted. Judgment was entered for the defendant, which was affirmed by the General Term.

*E. H. Benn* for appellant.　It is the duty of the city to have the streets at all times in a safe condition for travelers. (*Ehrgott* v. *Mayor, etc.*, 96 N. Y. 271 ; *Hume* v. *Mayor, etc.*, 74 id. 264 ; *Wendell* v. *Mayor, etc.*, 4 Keyes, 261, 263, 264, 265, 272 ; Dillon on Mun. Corp. §§ 981, 982 ; 96 N. Y. 271 ; 74 id. 264 ; *Wilson* v. *City of Watertown*, 3 Hun, 508 ; *Deyoe* v. *Village of Saratoga Springs*, 3 T. & C. 504 ; *Hutson* v. *Mayor, etc.*, 9 N. Y. 163.)　Facts were shown throwing on the defendant the burden of proving that the accident happened without its fault.　(95 N. Y. 562, 568.)　In such a case as this the action itself creates a presumption of negligence. (*Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y. 290, 291 ; *Edgerton* v. *N. Y. & H. R. R. Co.*, 39 id. 229 ; *Lyons* v. *Rosenthal*, 11 Hun, 46 : *Smith* v. *British, etc., Packet Co.*, 14 J. & S. 86 ; 18 Alb. L. J. 342 ; 29 id. 286, 287, 288.) On the pleadings alone the plaintiff is entitled to recover, and no proof was necessary except to show the extent of the injury. (*Clark* v. *Dillon*, 97 N. Y. 370 ; *Potter* v. *Smith*, 70 id. 299 ; *Pratt Mfg. Co.* v. *Jordan Iron Co.*, 67 How. Pr. 330 )

*D. J. Dean* for respondent.　The power to impose reasonable regulations and conditions as to the use of streets by steam companies is *quasi* judicial, involving the exercise of discretion in determining their character and extent, and the city is not liable in damages if the regulations adopted by it prove to be insufficient to prevent accident.　(*Griffin* v. *Mayor, etc.*, 9 N. Y. 456 ; *Cain* v. *City of Syracuse*, 95 id. 83 ; *Mills* v. *Brooklyn*, 32 id. 489 ; *Urquhart* v. *Ogdens-*

*burg*, 91 id. 71.) The laying of the steam pipes was made lawful by the legislature, so that even if the pipes developed into a nuisance the city would not be liable until it had notice, actual or constructive, of the nuisance. (*Hart* v. *City of Brooklyn*, 36 Barb. 226; *McKenna* v. *Mayor, etc.*, 47 J. &. S. 541; *Masterson* v. *Mt. Vernon*, 58 N. Y. 391.) In the absence of a provision in the statute requiring the city to supervise the engineering of the scheme, the mere duty to make reasonable regulations and conditions does not import an obligation to employ engineering experts and assume control of the work (*Hume* v. *Mayor, etc.*, 47 N. Y. 639; 74 id. 264, 276, *Cain* v. *City of Syracuse*, 95 id. 92; *McDermott* v. *City of Kingston*, 19 Hun, 198; *Kelly* v. *Mayor, etc.*, 11 N. Y. 432.) The accident was caused in a manner and under circumstances which were such that danger could not reasonably be anticipated, and failure to take precautions against such a danger does not constitute negligence. (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Dougan* v. *Transportation Co.*, 56 id. 1; *Cleveland* v. *Steamboat Co.*, 68 id. 306; *Loftus* v. *Ferry Co.*, 84 id. 455; *Laflin* v. *B. & S. W. R. R. Co.*, 106 id. 138.)

Andrews, J. The fact of the explosion, is itself a demonstration that the street was at the time in an unsafe and dangerous condition, and the only question is whether upon the evidence the city is or may be liable for the injury suffered by the plaintiff. The duty cast upon a municipal corporation to keep its streets in a safe condition for travel is not absolute, so as to impose liability upon the corporation in every case where a traveler, without fault on his part, sustains injury from a defective street. Its liability depends in all cases upon negligence, that is, upon the fact whether it has omitted to exercise due care, under the circumstances, in their maintenance or reparation. The mere existence of a defect from which a traveler sustains injury, does not, independently of negligence, establish a culpable breach of duty on the part of a municipality. The cases of injuries from obstructions placed in streets by

third persons without the consent of the municipality, of which it has no notice, are illustrations of the principle that the liability of a municipality for the unsafe condition of its streets rests upon the basis of negligence, and not upon an obligation assumed or imposed by law to keep the streets at all times and at all hazards in an absolutely safe condition for travel. Where an injury happens from the defect of a roadway itself, or from a dangerous condition of the street created by the act or consent of the municipality, negligence, as in the other cases mentioned, is the ground of liability. In the one class of cases the conclusion of negligence may be reached more easily than in the other, but the principle upon which the liability depends is the same in both, notwithstanding the difference in the circumstances. Where the defect is known, rendering the street unsafe and dangerous, the municipality is bound to be prompt and vigilant in remedying it. It is at all times bound to exercise due care that the streets are safe and free from dangerous defects, and that they shall not become unsafe or dangerous. To this extent its duty is absolute. The language of the cases expressing the measure of duty resting upon a municipal corporation in respect to its streets, sewers, etc., has not always been carefully guarded, but the doctrine has been frequently reiterated in this court that there is no absolute guaranty or undertaking on the part of a municipal corporation that its streets or other constructions shall at all times and under all circumstances be in a safe and proper condition, and that its obligation and duty extend only to the exercise of reasonable care and vigilance (*McCarthy* v. *Syracuse*, 46 N. Y. 194; *Smith* v. *Mayor, etc.*, 66 id. 295; *Ring* v. *Cohoes*, 77 id. 83; *Hubbell* v. *Yonkers*, 104 id. 434). There must be willful misconduct or culpable neglect to create liability.

It follows that negligence on the part of the city was an essential element of the plaintiff's case, and it was incumbent upon him to establish it, or to give evidence from which it could be inferred, before he was entitled to have the question submitted to the jury. The use of the street for the

steam pipes was expressly authorized by law. But the consent of the city to such use was required, and as on giving its consent, the city was empowered to prescribe reasonable regulations and conditions under which the right granted should be exercised, an omission on its part to prescribe proper regulations for the use of the streets for that purpose, or to exercise proper supervision over the work would, we think, justly render the city liable for accidents attributable to such omission. The plaintiff did not rest his case on the mere proof of the happening of the accident, and it is unnecessary to consider whether, in the absence of any evidence in the case beyond that, a presumption of negligence would have arisen which would have called on the city for explanation. (See *Curtis* v. *Rochester & Syracuse R. R. Co.*, 18 N. Y. 534.) The plaintiff proved the ordinance of the common council granting consent to the company to its use of the streets for the steam pipes, and also proved the manner in which they were laid ; their location with reference to the gas-pipes ; the fact that after the explosion the wood-box enclosing the steam pipes was found to be on fire ; the leakage of the gas-pipes, caused by the heat from the steam pipes, and their disturbance in the work of excavation, and also the opinion of the city inspector as to the cause of the explosion. It is insisted that the omission of the city to prescribe the manner of laying the steam pipes and their location, or to take any measures to guard against an explosion, was an omission of duty which renders it liable. It is inferable that the work was prosecuted under the observation of the city inspector having supervision of the laying of steam pipes in the city, and that the agents of the gas company were present to protect the gas pipes, and used all practicable care to render them secure. There is no proof that the steam pipes were improperly located, or indeed that any different location was practicable, or that a man-hole was not a proper arrangement, or that there was any lack of care in conducting the work The laying of steam pipes for the purpose for which these were laid was a new enterprise. The evidence introduced by the plaintiff tends to show that

such an accident, as in fact occurred, could not have been anticipated, and that there was no reasonable ground at the time for apprehending any danger from the proximity of the steam pipes to the gas pipes. Under such circumstances the omission of the city to make a regulation prescribing the manner in which the steam pipes should be laid, furnishes no evidence of negligence. The experience furnished by the accident led to the changes in the forms of coverings for the man-holes and to the substitution of a different method of joining the sections of the steam pipes, which apparently prevented thereafter the occurrence of similar accidents. But, so far as appears, all the precautions which at the time seemed to be necessary were taken to make the work safe and secure. The plaintiff has, without fault on his part, suffered a serious injury, but we think the evidence offered by him, taken together, not only does not tend to show any negligence on the part of the public authorities, but rather to exempt them from the imputation of negligence.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.