(163 App. Div. 195)

HAYMAN v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. June 5, 1914.)

1. RAILROADS (§ 303*)—GRADE CROSSINGS—CHANGES—NEGLIGENCE OF RAILROAD COMPANY.

A railroad company, obtaining a permit to change a grade crossing, must, when finishing the work, leave the street in as safe a condition as it found it, and must provide for the effects of the resumed and ordinary use of the street by the public, and of rain or snow and the changes of weather.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 959–963, 966, 967; Dec. Dig. § 303.*]

2. RAILROADS (§ 350*)—GRADE CROSSINGS—CHANGES—NEGLIGENCE OF RAILROAD COMPANY.

Whether a railroad company, obtaining a permit to change a grade crossing on condition that openings in the pavement should be refilled, and the pavement replaced and kept in good order, negligently failed, ou finishing the work, to replace the pavement so as to leave the street in an unsafe condition *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

3. RAILROADS (§ 351*)—GRADE CROSSINGS—CHANGES—NEGLIGENCE OF RAILROAD COMPANY—ACTIONS—INSTRUCTIONS.

Where, in an action against a railroad company changing a grade crossing for injuries to a traveler driving into a depression in the street, there was evidence that the depression had existed for at least two months, and that the soil originally put into the opening in the pavement when the company left the street had been partly carried away by vehicles and eroded by rains, and that the opening had originally been filled in so that the street surface was practically smooth, and so remained up to within two months before the accident, an instruction that no responsibility for the condition of the street rested on the company if, when the street passed back to the exclusive control of the city, it was reasonably safe was properly refused because leading the jury to believe that when the company quit the work the condition of the street was reasonably safe because the surface was practically smooth and remained so for some time.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. § 351.*]

4. APPEAL AND ERROR (§ 1064*)—PREJUDICIAL ERROR—INSTRUCTIONS.

Where, in an action against a railroad company changing a grade crossing for injuries to a traveler driving into a depression in the street, there was evidence that the depression had existed for at least two months, and that the opening made by the company doing the work had been filled in so that the street surface was practically smooth, and so remained for several months, an instruction that when the company had removed the tracks and filled in the space it lost the right of use and occupation, and the entire and exclusive control of the street passed to the city, but it was for the jury to determine whether the opening made by the company in doing the work was filled in properly so as to be reasonably safe, and unless some duty remained the company was not liable for a condition

which was the result of several months' wear and tear and the eroding effects of rain, was not prejudicial to the company.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

5. MUNICIPAL CORPORATIONS (§ 762*)—DEFECTIVE STREETS—LIABILITY.
Where a city granted to a railroad company a permit to change a grade crossing on condition that openings in the pavement should be refilled and the pavement replaced and the company did not, for months after it quit the work, attempt to comply with the permit, and the city permitted a depression, rendering the street unsafe, to exist without warning or signal, for a long time before an accident to a traveler driving into the depression, the city was liable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1605–1611; Dec. Dig. § 762.*]

Appeal from Trial Term, Kings County.

Action by Millie L. Hayman against the City of New York and the Long Island Railroad Company. From a judgment for plaintiff, both defendants separately appeal. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

William C. Beecher, of New York City, for appellants.

Stephen C. Baldwin, of Brooklyn (Joseph J. Cunningham, of New York City, on the brief), for respondent.

JENKS, P. J. This action was begun, tried, and submitted upon the theory of negligence, and the plaintiff has recovered a verdict against both defendants for her personal injuries suffered when the motor car in which she was a passenger was driven into a depression in a city street. Both defendants appeal in separate records. The defendant railroad corporation rested its case upon the plaintiff's proof, content to make motions for her dismissal and for a direction of a verdict. The defendant municipal corporation offered proof and made similar motions. I shall consider the appeal of each defendant in the order of their naming.

Pursuant to chapter 507 of the Laws of 1903, and under a permit from the city authorities prescribed therein, the defendant railroad corporation changed a grade crossing, and incidental to that work it cut an opening in the macadam pavement of the said street in order to put down certain temporary tracks. It finished the work about December 8, 1909, took up the tracks and filled up the opening, but did not replace the pavement. The casualty occurred on June 24, 1910.

[1] I think that the obligation upon the defendant when it finished its work in this street was to leave the street, so far as human observation could go, in as safe a condition as it found it. It was not enough to leave it in a safe condition for the time being, but this defendant should have foreseen and should have provided for the effects of the resumed and ordinary use of the street by the public, and of rain or snow and the changes of weather. Johnson v. Friel, 50 N. Y. 679; Allen v. Buffalo, Rochester & P. R. R. Co., 151 N. Y. 434, 45 N. E. 845. If it fell short of due care in its attempted discharge of this ob-

ligation, then it could be charged with culpable negligence as to this plaintiff.

[2] The permit under which the defendant worked expressly required that:

"The openings in the pavement shall be refilled with clean earth, well rammed down as put in, and the pavement immediately replaced and kept in good order at the expense of the company making the opening. In case of emergency or stormy weather, or other unforeseen difficulties, preventing the immediate restoration of the pavement, the same must be done as soon as the obstacle is removed."

It is undisputed that on the day of the casualty the macadam pavement had not been restored. There was testimony that on June 24, 1910, there was a depression across the street 6 or 8 feet wide and from 8 to 12 to 15 inches deep at its center; and that this condition had existed for at least two months. And there was testimony that the soil or loam originally put into this opening when the defendant left the street had been partly carried out by the wheels of vehicles, and had been eroded by rains and by changes of the weather. But there was also testimony elicited on the cross-examination of a single witness that this opening had been filled in so that the street surface was practically smooth, and remained apparently level at least as late as April 9, 1910. There was also testimony that indicated that one using the street, as did the driver of this motor car, would not, in consequence of a down and up grade at this point, see this depression in time to avoid it, that this car was not driven at an immoderate speed, and that its driver was unfamiliar with the street. I think that the case presented a question for the jury, and that the evidence justified a finding of liability on this defendant, in that it did not exercise due care in the work of restoration of the street, with the consequence of this depression.

[3] The defendant insists that its exception to the disposition of its request for an instruction, submitted after the main charge, is well taken. That request was:

"That no responsibility for the condition of the street rested on the Long Island Railroad if, when the street passed back to the exclusive control of the city, it was reasonably safe."

The court replied:

"I think I will leave that as a question of fact for the jury."

The counsel for the plaintiff commented:

"I call your honor's attention to the word 'exclusive.' It did not pass back to the exclusive control of the city so long as any duty of repair remained in the Long Island Railroad."

Thereupon the court, at the request of the defendant, defined in effect the expression "entire and exclusive control" as the time when this defendant "removed its tracks and the space was filled in." The court did not attempt a legal interpretation of these words "exclusive control," but intended to refer to the period when the defendant ceased its occupation of the street in the doing of this work. Resuming discussion of the instruction, I comment that apparently the ear of the

court was caught by the final words "reasonably safe," and the court was thus misled in dealing with a proposition of law. But I shall consider the disposition as tantamount to a refusal of the request. I think that the defendant was not entitled to the instruction. Without violence to the words "reasonably safe," the jury might have considered that at the time the defendant quit the work the condition of the street might be described as "reasonably safe"; i. e., that the opening, as testified to by the witness Swezey, had been filled in so that the surface of the street was practically smooth and remained for some time apparently level. But assume that the jury was none the less of opinion that the filling in was of such character that the defendant in the exercise of due care should have foreseen that eventually a depression would appear, or should have foreseen that in any filling in without restoration of the pavement eventually such a depression would appear. Yet would the jury have been free to find liability in the face of such an instruction? I think that the defendant was not necessarily excused from repavement because a witness testified without contradiction that in order to make a good job of macadamizing "you have to leave it for good weather," for such an expression in its full value is not enough to excuse an omission from December 8th to the following June 24th, or even from April 9th to that date.

[4] I think that the jury was not confused by the subsequent instructions, which may be collated thus: When the defendant had removed the tracks and filled in the space, it lost the right of use and occupation, and the entire and exclusive control of the highway passed to the city, but it was a question for the jury whether the opening was filled in properly so as to be reasonably safe, but unless some duty remained in the defendant, it could not be held liable for a condition which was the result of six months' wear and tear and the eroding effects of rain. The question now up is, not whether the instructions were absolutely correct, but whether they were prejudicial to the defendant.

[5] This other defendant, unlike the railroad company, did not rest upon the plaintiff's case, but offered certain testimony which was directed to the physical character of the depression. But this testimony was that of estimation. And at the close of the case there was no proof that established, as matter of law, that the depression was safely negligible so far as the city was concerned.

The jury could have found upon the facts that the city did not fulfill its obligation to see to it that when the railroad company finished its work it left the street in as safe a condition as it found it. Admittedly the railroad company did not, up to the time of the accident, months after it had quit the work, attempt to comply with the requirements of the permit issued by the city authorities. See Hunt v. Mayor, etc., of New York, 109 N. Y. 134–142, 16 N. E. 320; Schumacher v. City of New York, 166 N. Y. 103–109, 59 N. E. 773; Godfrey v. City of New York, 104 App. Div. 357, 93 N. Y. Supp. 899; Parks v. City of New York, 111 App. Div. 836, 98 N. Y. Supp. 94, affirmed 187 N. Y. 555, 80 N. E. 1115; Tabor v. City of Buffalo, 136 App. Div. 261, 120 N. Y. Supp. 1089; Lobravico v. City of New York, 155 App. Div.

184–188, 140 N. Y. Supp. 161. The jury could have found that the city had permitted this depression, which rendered the street unsafe, to exist without warning or signal of any danger at this point. Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095, 15 Am. St. Rep. 442. The period as testified to by the plaintiff's witnesses has been discussed. The police inspector who had charge of the territory, called by this defendant, admits that this condition had continued for days and weeks before the casualty.

The judgment and order should be affirmed, with costs. All concur.