GEORGE A. GREEN, Respondent, *v.* CITY OF MECHANIC-
VILLE, Appellant.

LORETTA GREEN, Respondent, *v.* CITY OF MECHANIC-
VILLE, Appellant.

118

(Argued October 18, 1935; decided November 19, 1935.)

*Patrick J. Keniry* for appellant. The tracks are in the street lawfully and are not a public nuisance. (*Hayes* v. *Brooklyn Heights Ry. Co.*, 200 N. Y. 183; *Hollis* v. *Brooklyn Heights R. R. Co.*, 128 App. Div. 821; *Brownell* v. *Town of Greenwich*, 114 N. Y. 518; *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *People ex rel. City of New York* v. *New York Ry. Co.*, 217 N. Y. 310; *People ex rel. Village of Chateauguay* v. *Public Service Comm.*, 255 N. Y. 232; *City of New York* v. *Dry Dock, E. B. & B. R. R. Co.*, 135 Misc. Rep. 678; 225 App. Div. 794; 251 N. Y. 583; *Davis* v. *New York*, 14 N. Y. 506; *Lambert* v. *Westchester Electric R. R. Co.*, 191 N. Y. 248; *Bushnell* v. *Chicago, B. & Q. R. R. Co.*, 259 Ill. 391; *People ex rel. H. R. & P. C. R. R. Co.* v. *Tax Commrs.*, 215 N. Y. 507; *Paige* v. *Schenectady Ry. Co.*, 178 N. Y. 102; *City of New York* v. *Hudson & M. R. R. Co.*, 229 N. Y. 141; *People ex rel. City of Olean* v. *W. N. Y. & P. T. Co.*, 214 N. Y. 526.) In its dealings with the Hudson Valley Railway

Company the city of Mechanicville assists the State in the exercise of a governmental function. (*People ex rel. H. R. & P. C. R. R. Co.* v. *Tax Commrs.*, 215 N. Y. 507; *City of New York* v. *Bryan*, 196 N. Y. 158; *Binninger* v. *City of New York*, 177 N. Y. 199; *City of Troy* v. *United Traction Co.*, 202 N. Y. 333; *Matter of New York Central R. R. Co.*, 177 App. Div. 444; *People ex rel. City of New York* v. *N. Y. Ry. Co.*, 217 N. Y. 310; *City of Schenectady* v. *Schenectady Ry. Co.*, 118 Misc. Rep. 676.) The plaintiffs failed to prove any negligence on the part of the defendant. (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340; *Klein* v. *Town of Pittstown*, 241 App. Div. 202; *Lyman* v. *Village of Potsdam*, 228 N. Y. 398; *Kuhn* v. *Village of East Syracuse*, 209 App. Div. 186; *Taylor* v. *City of Yonkers*, 105 N. Y. 202; *Harrington* v. *City of Buffalo*, 121 N. Y. 147; *Blakeley* v. *City of Troy*, 18 Hun, 167; *Cohen* v. *City of New York*, 204 N. Y. 424; *Moran* v. *City of New York*, 98 App. Div. 301; *Dupont* v. *Village of Port Chester*, 204 N. Y. 351; *Mayor of New York* v. *Sands*, 105 N. Y. 210; *Lichtenstein* v. *Mayor*, 159 N. Y. 500; *Kaveny* v. *City of Troy*, 108 N. Y. 571; *Kinney* v. *City of Troy*, 108 N. Y. 567.)

*Paul Windels, Corporation Counsel* (*Paxton Blair* and *Matthew J. Troy* of counsel), for City of New York, *amicus curiæ.*

*John F. Doyle* and *James G. Heffernan* for respondents. The evidence supports the verdict of the jury. (*Ehrgott* v. *Mayor*, 96 N. Y. 264; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *McNulty* v. *City of New York*, 219 App. Div. 831; *Lehmann* v. *City of Brooklyn*, 30 App. Div. 305; *McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340; *Hogle* v. *Franklin Mfg. Co.*, 199 N. Y. 388.) The defendant is liable for injuries resulting from the presence of the abandoned rails in the street. (*Village of Stillwater* v. *Hudson Valley Ry. Co.*, 255 N. Y. 144; *Turnbull* v. *Longacre Bank*, 249 N. Y. 159; *Osgood* v. *Toole*, 60 N. Y. 475; *Callanan* v.

*Gilman*, 107 N. Y. 360; *People* v. *Thompson*, 98 N. Y. 6; *Davis* v. *Mayor*, 14 N. Y. 506; *Astor* v. *N. Y. Arcade Ry. Co.*, 3 N. Y. St. Repr. 188; *Village of Hempstead* v. *Ball Electric Co.*, 9 App. Div. 48; *Koehler* v. *City of New York*, 262 N. Y. 74; *Metzroth* v. *City of New York*, 241 N. Y. 470; *Stern* v. *International Ry. Co.*, 220 N. Y. 284; *Corcoran* v. *City of New York*, 188 N. Y. 131; *City of Rochester* v. *Campbell*, 123 N. Y. 405; *Matter of McCoy* v. *Apgar*, 241 N. Y. 71; *Village of Oxford* v. *Willoughby*, 181 N. Y. 155; *Wakeman* v. *Wilbur*, 147 N. Y. 657; *People ex rel. Hofeller* v. *Buck*, 193 App. Div. 262; 230 N. Y. 608; *Powers* v. *Village of Mechanicville*, 163 App. Div. 138.) The presence of the ridges of ice constituted a nuisance growing out of negligence. (*Rehberg* v. *Mayor*, 91 N. Y. 137; *Gillrie* v. *City of Lockport*, 122 N. Y. 403; *Pomfrey* v. *Village of Saratoge Springs*, 104 N. Y. 459; *Todd* v. *City of Troy*, 61 N. Y. 506; *Magid* v. *City of New York*, 234 App. Div. 38; *Lehmann* v. *City of Brooklyn*, 30 App. Div. 305; *Taylor* v. *City of Albany*, 239 App. Div. 217; 264 N. Y. 539; *Khoury* v. *County of Saratoga*, 243 App. Div. 195; 267 N. Y. 384.)

LOUGHRAN, J.   An automobile in which the plaintiffs were riding on Main street in the defendant city of Mechanicville left the roadway and collided with a nearby pole.   There was evidence adequate to sanction a conclusion that the collision was caused by the skidding of one of the rear wheels of the vehicle over ice that had formed on the rails of a trolley track of the Hudson Valley Railway Company laid in the center of the street. No use had been made of the track for five years before the accident occurred on December 17, 1933.   The city has been held to liability for the respective damages of the plaintiffs as for the results of unreasonable failure to abate an unnecessary and dangerous obstruction of the highway.

We are asked to affirm the judgments upon the broad ground that the mere existence in a highway of street

railway tracks of any and every kind, irrespective of location or condition, is made unlawful solely by continued nonuser. If this contention is open to the plaintiffs upon the record, we have no hesitation in saying that in our opinion it would be neither just nor expedient to lay down so wide a legal doctrine. We have found no precedent for the proposition and the analogies of the law give no support to it.

It is said that the Appellate Division has here read our decision in *Village of Stillwater* v. *Hudson Valley Ry. Co.* (255 N. Y. 144, 151) as such a precedent. In that case it was held that, since a municipal license to the railway company had for sufficient cause been withdrawn, the tracks were thereafter in the street without authority, and, therefore, a public nuisance which the village could compel the company to remove. In that disposition of that case there was no element of novelty. (*Milhau* v. *Sharp*, 27 N. Y. 611; *Fanning* v. *Osborne*, 102 N. Y. 441; *Village of Hempstead* v. *Ball Electric Co.*, 9 App. Div. 48.)

Here the municipal consent to the railway company had not been recalled. The grant was the act of the Board of Trustees of the village of Mechanicville, the corporate predecessor of the defendant city. It is thereby provided: "And in case said [railway] company shall fail to complete said road * * * or to operate the same at the time or times, and in the manner, herein provided; * * * then said Board of Trustees may, by resolution, annul and vacate this permit, consent and authority; and thereupon and thereafter all rights, privileges and authority granted herein and hereby shall cease and determine; * * * and thereupon said company, its successor and assigns shall forthwith remove all poles, wires, rails, tracks, ties and other appurtenances, and restore the surface of the street to its original condition." To us the plain import of this provision is " that the nonuser of the franchise is the breach of a condition subsequent, with the result that the privilege survives

until revoked." (*People ex rel. Vil. of Chateaugay* v. *Public Service Comm.*, 255 N. Y. 232, 242. Cf. *Matter of Brooklyn, etc., R. R. Co.*, 185 N. Y. 171; *Manton* v. *South Shore Traction Co.*, 121 App. Div. 410.) In short, this track of the railway company at the time of the accident was not an unauthorized occupancy of the street, and the pr'nciple of the decision in the *Stillwater Case (supra)* is inapposite.

Concededly the track structure was not in fact a nuisance in itself. The street had been repaved in 1927. As part of that improvement, the railway company had then been required wholly to restore its way. This was done in accordance with approved modern methods,— the steel rails (supported by steel plates fixed upon steel ties) being geared flush with the surface of the new concrete and brick pavement. That construction was not without more a nuisance (See *Reining* v. *N. Y., L. & W. Ry. Co.*, 128 N. Y. 157; *Hentz* v. *Long Island R. R. Co.*, 13 Barb. 646; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546, 551; cf. *Brown* v. *Met. St. Ry. Co.*, 60 App. Div. 184; 171 N. Y. 699), and no claim was made of subsequent deterioration or displacement of any part of the trackage or of the roadway wherein it was embedded. (Cf. *Wooley* v. *Grand St. & Newtown R. R. Co.*, 83 N. Y. 121; *Schild* v. *C. P., N. & E. R. R. R. Co.*, 133 N. Y. 446.)

The city was not to answer for the accident on an argument that it would have been better judgment to have passed a resolution extinguishing the local rights of the railway company so as in any case to get its equipment out of the street. An error in the discharge of such a governmental or discretionary power does not subject a municipal corporation to liability at common law. (*Wilson* v. *Mayor*, 1 Den. 595; *Rogers* v. *City of Binghamton*, 101 App. Div. 352; 186 N. Y. 595; *Edson* v. *City of Olathe*, 81 Kan. 328, 331.) On the other hand, the city owed to the public the corporate duty of maintaining the street in a condition reasonably safe for the ordinary uses of

travel, and the only question is whether the proof went the length of warranting a verdict that the damages resulted from neglect to perform that duty in this instance.

On the day of the accident, and on occasion theretofore, rain froze on the unused rails in a greater degree than on the contiguous pavement. A chief reason for this was that steel is a more efficient conductor of heat than is brick or concrete. The trial judge told the jury that such a situation in the street was evidence on which the city could be found to have been negligent. We are unable to assent to that ruling.

It was not pretended that any unusually dangerous tendency of the rails, under the conditions at the time the plaintiffs were hurt, was manifest in the light of common experience. Indeed the proof of the plaintiffs was that the particular danger came from a combination of events to be interpreted only by an expert. The interpretation was supplied in these words: " I assume that some rain fell that day. The report shows eighteen one-hundredths of an inch. It wasn't cold enough to freeze. * * . * Coming in contact with the brick pavement, on which some ice had already formed, due to the fact that the brick was cold, a thin layer formed and there was not heat enough taken away from the water to freeze it immediately, and traffic, going by, probably splashed the water. * * * If it struck the bare rail, it would freeze * * * and ridges of ice would form over the rails * * * from half an inch to two inches, depending on how rapidly the water was thrown up onto the ridges and other factors that I cannot be absolutely certain about." It is not urged that the city authorities were bound to know what could thus have been foreseen only by a specialist, but the contention is that, since much the same consequence had previously been observed from time to time when the rails were unused, enough was known to raise a duty to inquire as to the cause, or that so the jury could say. We cannot adopt that position.

The presence of trolley rails in the streets of our cities has been a commonplace for a generation, and has continued to be accepted as a factor no more fraught with peril to motorists than some other obvious hazards of increasing traffic congestion. We are not prepared to say that a situation lawful in itself and long reckoned with as standard by users of the highways must be safeguarded by municipal corporations against the effects of varying weather conditions. Even less are we ready to decide these cases on such a theory. We think that the chance of this accident was not in the circumstances so appreciable that the man of ordinary prudence in maintaining the street would have taken steps to prevent it. (See *Hunt v. Mayor*, 109 N. Y. 134; *Beltz* v. *City of Yonkers*, 148 N. Y. 67; *Kleng* v. *City of Buffalo*, 72 Hun, 541; 156 N. Y. 700; *Dupont* v. *Village of Port Chester*, 204 N. Y. 351. Cf. *Khoury* v. *County of Saratoga*, 267 N. Y. 384.)

In each case, the judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and FINCH, JJ., concur; CROUCH, J., not sitting.

Judgments reversed, etc.